[No. 2035]

## MATHIAS JENSEN AND ANNA JENSEN, HIS WIFE, RESPONDENTS, v. PETER P. WILSLEF AND NIELS WILSLEF, APPELLANTS.

1. VENDOR AND PURCHASER—VENDOR'S LIEN.

   While a vendor ordinarily has a lien on the land for the unpaid purchase money, his right to hold and maintain such lien must be determined from the nature of the transaction, the circumstances surrounding the conveyance, and the intention of the parties at the time of making the contract, for the right of a vendor cannot be determined by subsequent acts of either party.

2. VENDOR AND PURCHASER—VENDOR'S LIEN—RIGHT TO.

   Though vendor ordinarily has a lien for unpaid purchase price, such lien cannot be claimed where vendor has accepted other security for payment of the price, such as a promissory note or a mortgage.

3. VENDOR AND PURCHASER—VENDOR'S LIEN—PRESUMPTIONS.

   It requires no express waiver on the part of a vendor to destroy his vendor's lien for the unpaid purchase price; the law presuming a waiver whenever the vendor accepts any independent security.

4. VENDOR AND PURCHASER—VENDOR'S LIEN—RIGHT TO.

   Where a vendor of land accepted a certificate of deposit in payment of the purchase price, or at least as security for that portion of the purchase money indicated by the face of the certificate of deposit, and there was nothing to show that the vendor was imposed upon by artifice or trick, his right to a vendor's lien was waived.

5. PAYMENT—CHECKS—EFFECT.

   A debt cannot be discharged with an unpaid check, except upon a clear showing that the creditor at the time accepted such check absolutely and unconditionally.

6. APPEAL AND ERROR—REVIEW—FINDINGS.

   Where the evidence is conflicting, a finding of the trial court will not be disturbed on appeal.

7. BILLS AND NOTES—CERTIFICATES OF DEPOSIT—EFFECT.

   Certificates of deposit are promissory notes, and have the same force and effect as a promissory note; indorsers thereon being bound by the same rules that apply to indorsers on a note.

8. BILLS AND NOTES—INDORSEMENT—EFFECT.

   A person who indorses a note in blank usually warrants the solvency of the parties.

9. BILLS AND NOTES—INDORSEMENT—LIABILITY OF INDORSER.

   Under Revised Laws, 2613, providing that every indorser, without qualification, warrants that on due presentment it shall be accepted or paid, and that, if dishonored, he will pay the

amount thereof to the holder, one who indorses in blank a certificate of deposit is liable to the holder where the paper is dishonored owing to the insolvency of the bank.

10. BILLS AND NOTES — INDORSEMENT — LIABILITY OF INDORSER — BURDEN OF PROOF.

In general, where an indorser contends that his indorsement was understood to be other than a warranty of payment, he has the burden of proving the same.

11. BILLS AND NOTES—INDORSEMENT—EFFECT OF INDORSEMENT.

Where a certificate of deposit already indorsed in blank is negotiated by the holder, nothing that the holder can do will alter the liability of the indorser.

12. VENDOR AND PURCHASER—LIABILITY OF PURCHASER.

A vendee who is the real purchaser is liable for the purchase price, even though he directs the title to be transferred to another.

APPEAL from the First Judicial District Court, Douglas County; *Frank P. Langan*, Judge.

Action by Mathias Jensen and wife against Peter P. Wilslef and another. From a judgment for plaintiffs, defendants appeal. **Affirmed in part, and reversed in part.**

The facts sufficiently appear in the opinion.

*Alfred Chartz*, for Appellants:

The evidence was insufficient to support the finding that "said certificate of deposit was not received or accepted as unconditional payment of the balance due on the purchase price of said land, but was intended to constitute payment in the event the said certificate was paid." There is not a word of testimony to show any such conditional acceptance, and all the circumstances and acts of the parties deny and repel such idea.

During the trial of the case, as shown by the transcript of the evidence, the main contention of respondents was to the effect that appellants were trying to vary the terms of a written contract, and in their brief they cite the court to thirty-one authorities, and some more. But the truth is that appellants were not trying to vary the terms of a written contract, but to enforce it as written, and as pleaded: "and then and there endorsed the same to plaintiffs as part payment of the purchase price of said land."

Counsel for appellants introduced evidence to confirm and prove the fact that said certificate of deposit was endorsed as part payment of the purchase price of said land, and counsel for respondents introduced evidence in an attempt to vary said terms of said contract as alleged, trying to prove that the same was not accepted as part payment, only in the event that it was paid.   So the mass of authorities cited by counsel for respondents applies against their contention.

That respondents accepted said time certificate of deposit on the State Bank and Trust Company, there can be no doubt.   They delivered their deed and accepted a time certificate of deposit on the Gardnerville bank, and accepted the Allerman note, and accepted part cash, and allowed appellants to discount interest due to date of execution and delivery of deed on. the time certificate of deposit on the State Bank and Trust Company, making a complete transaction between the parties, and the incident should be closed in accordance with their own acts, clearly proving their mutual understanding of the meaning of the words quoted.

It is the intention of the parties that governs, and the endorsements of the several parties—appellants and respondents—were made for the purpose of enabling respondents to collect said time certificate of deposit, not for the purpose of insuring the payment thereof; and the said time certificate of deposit on the State Bank and Trust Company was accepted by respondents as partial payment of the purchase price of said land, as pleaded in the complaint; and the delivery of the deed to appellants, and acceptance of cash and the Allerman note, and time certificate of deposit on the Douglas County Bank of A. Jensen, and acceptance of the time certificate of deposit on the State Bank and Trust Company, became one and the same transaction between the parties, and became a closed incident and transaction, there being no fraud alleged or proved between the parties.

Where a note is taken as collateral security for an existing debt, and on the faith thereof, the consideration

is sufficient, and the holder is a purchaser for value in due course of business. (*Samson* v. *Ward,* 132 N. W. 629.)

I argue, *a fortiori,* the taking of a certificate of deposit, and acceptance thereof, and delivery of deed, binds the transaction more firmly than the taking of a note, and shows more strongly the intention of the parties. (*Lindsey* v. *McClelland,* 18 Wis. 485; Stats. Nev. 1907, p. 117, art. 3, "Negotiation," secs. 30, 31; *Van Doren* v. *Tjader,* 1 Nev. 387; *Comptoir d'Escompte de Paris* v. *Dresbach,* 78 Cal. 15; *Hall* v. *Stevens,* 116 N. Y. 201, 22 N. E. 374; *Craig* v. *Craig,* 24 Am. Dec. 390; *Crutchfield* v. *Robbins,* 42 Am. Dec. 417; *Ware* v. *Street,* 75 Am. Dec. 755; *Bangor* v. *Warren,* 56 Am. Dec. 657; *Smith* v. *Bettgar,* 34 Am. Rep. 256.)

*Mack, Green & Heer,* for Respondents:

There is no evidence showing, or tending to show, that either the plaintiffs or defendants intended to release Niels P. Wilslef from his liability as an endorser on said certificate.

This court has held that the terms of a written contract cannot be varied by parol testimony. (*Travis* v. *Epstine,* 1 Nev. 116; *Menzies* v. *Kennedy,* 9 Nev. 152.)

Counsel in his brief insists that in the complaint the plaintiffs allege that they took the time certificate as part payment of the purchase price of their land. In this counsel is mistaken. Plaintiff made no such allegation. What the plaintiffs did allege is: "and then and there endorsed the same to plaintiffs as part payment of the purchase price of said land." Nowhere in the complaint did plaintiffs allege that they took the certificate for part payment, but, on the contrary, they allege that the defendants endorsed the time certificate as part payment. Nowhere in the complaint and nowhere in the evidence is it shown that plaintiffs took the certificate as absolute payment, but, on the contrary, it is alleged and shown that it was given to plaintiffs by defendants, and plaintiffs took it on the strength of the endorsement.

By the Court, MCCARRAN, J.:

In this action the plaintiffs, Mathias Jensen and Anna Jensen, his wife, seek to recover judgment against Peter P. Wilslef and Niels P. Wilslef for the sum of $1,400, with interest, and for a decree of the court declaring a vendor's lien against certain premises conveyed and for a decree foreclosing said lien in favor of the plaintiffs and against the defendants. The facts disclose that on the 6th day of June, 1907, Peter P. Wilslef and wife visited the home of Mathias Jensen and wife, and there negotiated for the purchase of a 40-acre tract of land, the home of the Jensens. The agreed purchase price was $4,500. On the occasion of negotiating the purchase Mr. Wilslef paid $50 "to bind the bargain," and exhibited to Mr. Jensen certain certificates of deposit and other collateral, the aggregate of which amounted to approximately $4,500. On the 12th day of June, 1907, the parties met at the courthouse at Genoa, Douglas County, for the purpose of closing the transaction. It was the understanding that the deed should be made to Niels P. Wilslef, son of Peter P. Wilslef, but by mistake it was made to Peter P. Wilslef. At the time of making the delivery of the deed Peter P. Wilslef turned over to Jensen certificates of deposit on the Gardnerville Bank, a personal note drawn by a private party, and the certificate of deposit on the State Bank and Trust Company of Carson City, the latter for the sum of $1,400. This certificate was payable to Niels P. Wilslef, and the date of maturity was March 8, 1908, and was endorsed by Niels P. Wilslef in blank. Together with these certificates Peter P. Wilslef paid over approximately the sum of $300 in cash. Some months subsequent to the transaction the State Bank and Trust Company suspended, and on the 9th day of March, 1908, the respondents presented the certificate of deposit to the State Bank and Trust Company at its office in Carson City, and, payment being refused, the certificate was protested, and notice of refusal and protest was served upon appellants. The

case was tried in the district court of the First judicial district in and for Douglas County, and judgment rendered for plaintiffs, respondents herein, decreeing a vendor's lien in favor of the plaintiffs and rendering a personal judgment against the defendants for the sum of $1,400, with interest at 7 per cent. A motion for a new trial was made and denied, and from the order denying defendant's motion for a new trial and from the judgment an appeal is taken to this court.

It is the contention of the respondents that they took over the certificate of deposit solely as security for a part of the purchase money, while the appellants contend that the certificate was received in full payment for that portion of the purchase money represented by its face.

By the pleadings in the case two questions are presented to this court: First, are plaintiffs, respondents herein, entitled to an equitable lien against the premises conveyed for a part of the purchase money; and, second, are respondents entitled to personal judgment against appellants?

**1.** The right of a vendor's lien against an estate conveyed was recognized at common law, and we find that many of the early English decisions have dealt exhaustively upon the vexing problem.

The Lord Chancellor Eldon, in a very early English case, speaking upon the subject, said: "It has always struck me considering this subject that it would have been better at once to have held that the lien should exist in no case, and the vendor should suffer the consequences of his want of caution, or to have laid down the rule the other way so distinctly that a purchaser might be able to know, without the judgment of a court, in what cases it would and in what it would not exist." (*Mackreth* v. *Symmons*, 15 Vesey Jr.'s Reps. 339.) In that case the chancellor set forth what was then and has since been the generally accepted doctrine relative to vendor's lien, in that there may be security which will have the effect

of waiving the lien, and that is especially true if the security be totally distinct and independent. Where a distinct and independent security is taken by the vendor, it becomes a substitution for the lien, instead of a credit given on account of the lien. The intention of a vendor to waive an equitable lien may be manifest from the very nature of the security taken by him at the time of the transaction, and hence a court of equity must determine largely from the facts and circumstances surrounding the transaction as to whether or not the vendor in fact intended to reserve his equitable lien against the premises conveyed.

"No other single topic," says Mr. Pomeroy in his work on Equity Jurisprudence, "belonging to the equity jurisprudence has occasioned such a diversity and even discord of opinion among the American courts as this of the grantor's lien. Upon nearly every question that has arisen as to its operation, its waiver or discharge, the parties against whom it avails, and the parties in whose favor it exists, the decisions in different states, and sometimes even in the same state, are directly conflicting." (3 Pomeroy, Eq. Jurisp. 1251.)

From a careful reading of the ancient authorities dwelling upon the application of a vendor's lien at common law, it will be observed that the right of a lien in favor of the vendor upon real estate sold to the vendee is not based upon contract. It is not an equitable mortgage; it cannot be regarded as accruing to the vendor by reason of the vendee holding the estate with the purchase money unpaid. The whole thing resolves itself down to be a simple equity raised and administered by courts of chancery. No fixed rules have even been made that measure it, and it does not depend upon any particular set of facts. Each case rests upon its own particular conditions, and courts of equity passing upon the applicability of vendors' liens have given or denied the lien according to its rightfulness and equity growing out of the facts developed in each particular case. Courts of

equity in many of the states of the Union have either ignored or refused to recognize a vendor's lien. In Connecticut, Delaware, Georgia, Kansas, Maine, Massachusetts, Nebraska, New Hampshire, North Carolina, South Carolina, Oregon, Pennsylvania, Vermont, Virginia, Washington and West Virginia, the doctrine of a vendor's lien has been either condemned by the courts or enacted against by the legislature. Mr. Pomeroy, in discussing the subject under American Jurisprudence, says: "The original grounds and reasons for admitting the grantor's lien do not exist here, and the lien itself is not in harmony with our general real property law. The tendency both of our legislation and of our social customs is to make land a subject of commerce and its transmission as free as possible, while the rights of grantors can be fully protected by mortgages which under nearly all the states are widely different from the instrument bearing the same name in England."

Chief Justice Marshall, speaking for the Supreme Court of the United States, in the case of *Bayley* v. *Greenleaf*, 7 Wheat. 46, 5 L. Ed. 393, says: "It is a secret invisible trust, known only to the vendor and vendee and to those to whom it may be communicated in fact. To the world, the vendee appears to hold the estate divested of any trust whatever; and credit is given him in the confidence that the property is his own, in equity as well as law. A vendor relying upon this lien ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is in some degree accessory to the fraud committed on the public by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien." The right of a vendor to hold and maintain a lien against an estate conveyed is one that must be determined from the nature of the transaction, the circumstances surrounding the conveyance, and the intention of the parties at the time of entering into the transaction. The right of a vendor to maintain an equitable lien against an estate, which he may have conveyed, cannot in justice be determined either from the subsequent acts.

of the vendee or the subsequent acts of the vendor, but must be determined from the facts immediately surrounding the transaction.

2. Whenever it appears from all the facts surrounding the transaction that a separate and distinct security was offered by the vendee and accepted by the vendor, the presumption is that the lien was waived. Any agreement by parol or otherwise to accept a security and rely upon it will discharge the vendor's lien for the unpaid purchase money. (*Porter* v. *Dubuque*, 20 Iowa, 445.)

The question of a vendor's lien has never been touched upon by the legislative branch of our state government, and hence our statute is silent on that subject, save and except in so far as we declaratively adopted the common law, but the right of a vendor to hold an equitable lien against an estate conveyed, under certain circumstances at least, was sanctioned to some extent ·by this court in the case of *Reese* v. *Kinkead*, 18 Nev. 126, but that decision, rendered as it was in the light of a very peculiar set of circumstances, touched but inferentially upon the subject. The general practice in equity has been to give the vendor a lien for the price of the estate sold without any special agreement, but the better line of reasoning in cases touching upon this subject, both in English jurisdictions and in America, has been to preclude the vendor from an equitable lien where he assumes to take other security than the estate itself. If he carves out a security for himself, he precludes himself from a vendor's lien. If the security taken be totally distinct and independent, it will then become a case of substitution for the lien, instead of a credit given because of the lien. For instance, a mortgage may be given upon another estate of the vendee, and in no wise mention the estate conveyed by the vendor. This principle applies not only in a case where a mortgage is given by the vendee to the vendor upon a separate estate, the property of the vendee, but also where a mortgage is given upon a part of the estate conveyed by the vendor, and it applies equally with regard to any other pledge given by the vendee and accepted by

the vendor for the purchase money or any part thereof.
(*Nairn* v. *Prowse*, 6 Vesey Jr.'s Rep. 760.)

In a case where the vendor accepts a negotiable note
of the purchaser, indorsed by a third party, for the resi-
due of the purchase money, it is such a separate security
as will by its very nature extinguish the lien. (*Brown*
v. *Gilman, et al.*, 4 Wheat. 255, 4 L. Ed. 564; *Corlies* v.
*Howland*, 26 N. J. Eq. 311; *Dudley* v. *Dickson & Matlack*,
14 N. J. Eq. 252.)

Professor Kent in his Commentaries says: "Taking a
note, bill, or bond with distinct security, or taking distinct
security exclusively by itself, either in the shape of real
or personal property from the vendee, or taking the
responsibility of a third person, is evidence that the seller
did not repose upon the lien, but upon independent secur-
ity, and it discharges the lien." Any act on the part of
the vendor in the way of taking distinct security either
in the shape of real or personal property from the vendee,
or taking the responsibility of a third person, implies
a waiver of the lien. Any act which indicates that it
was not the intention of the parties that the purchase
money should continue a lien upon the land conveyed is
a waiver of the lien. In the case of *Ilett* v. *Collins, et al.*,
103 Ill. 74, the supreme court of that state had occasion
to pass upon the subject of a vendor's lien, where the
vendee had offered and the vendor had accepted stock in
a corporation as security for the purchase price of an
estate, and the court said: "The taking of such collateral
security was a clear waiver by the vendors of any lien
on the property for the purchase money, and when once
waived it cannot, of course, be reasserted to by the
vendors."

**3, 4.** The testimony of the respondent given at the
trial in this case indicates clearly to our mind that he
had no intention or thought of holding a lien or incum-
brance, either expressed or implied, upon the estate
conveyed. His testimony in part is as follows:

Q. And he pulled out his certificates of deposit and
put them on the table, so you could see them, and told
you, he could pay only so much money, and give you the

balance in the certificates of deposit?   That is to say, a check on the Gardnerville Bank, we will call it the Gardnerville Bank for convenience, and give you a time certificate on the Carson Bank, is that right?   A. Yes.   He said there was some in the Gardnerville Bank and some in the Trust Bank in Carson, but he didn't say the amounts that day.

At another place in his evidence he testified as follows:

Q. Did you accept them in that way?   A. Yes; I to cash them when they came due.

Q. Did you accept them?   A. Yes.

Q. Was it agreeable to you?   A. Yes; I could spare the money.

Later on in his cross-examination he testified as follows:

Q. Have you any reason to give to the court why you gave an absolute deed, if you didn't accept these checks as absolute payment?   A. Because, I didn't expect the bank to close up until they became due.

Q. That is your reason why you did not?   You did not know the bank was going to close up?   A. No.

Q. You had no reason to suspect these checks?   A. Not at that time; not in the way we took the check.   Everybody would take them, if it was necessary for me to transfer them.

Q. And you believed it?   A. Yes; that is what Wilslef told me when I took them, 'That anybody would take them.'   I took them on the strength of that.

Q. Did you doubt that?   A. I didn't that day.   I always heard the Trust Company was very solid, and won't close or anything.

From this it will be observed that, if the plaintiff Jensen did not take the certificate of deposit in question as absolute payment of a part of the purchase money, he by his own statement admits that at least he took the certificate as security for a part of the purchase money to the amount of $1,400.   Having done this, we are of the opinion in the light of all the authorities that he expressly placed himself in a position where he could not afterwards insist upon the enforcement of a vendor's lien. Moreover, the facts in the case as developed by the

testimony of respondent himself clearly indicates that it was his intention at the time of delivering the deed to convey the estate absolutely unincumbered.

It is to be observed in this case that, although Peter P. Wilslef was the negotiator of the transaction and the real purchaser, he turned over to Jensen the certificate of deposit in question, and the latter accepted it without requiring the endorsement of Peter P. Wilslef. This of itself, we think, if it stood alone, is sufficient to warrant the presumption that at the time of the delivery of the deed Jensen had no intention or desire to hold any lien whatever against the estate conveyed. It requires no express waiver on the part of the vendor to destroy the lien. The law presumes that the lien is waived where a vendor accepts independent security either in payment of part or all of the purchase money. If Jensen relied upon the certificate of deposit, either as absolute payment, or as security for the payment of part of the purchase money, the burden of proof would be upon him to establish by appropriate evidence that he did not waive an equitable lien upon the premises conveyed. (*Cresap* v. *Manor*, 63 Tex. 485.) In taking the certificate of deposit indorsed by Niels P. Wilslef, the respondent was taking the obligation of a fourth party, indorsed by a third party, and not indorsed by the second party to the transaction. This of itself indicates that the vendor reposed upon the certificate if not in full payment at least as security for that portion of the purchase money indicated by the face of the certificate of deposit, and he is precluded from enforcing an equitable lien. (*Marshall* v. *Christmas*, 3 Humph. Tenn. 616, 39 Am. Dec. 199.)

In a recent case decided by the Supreme Court of California, the conditions of which are very much analogous to those belonging to the case under consideration, that court decided that the receipt of a note, made by a third party to the transaction and given as security for a part of the purchase money, worked an absolute waiver of the vendor's lien. This decision was rendered in the light of a statutory provision appertaining to a vendor's

lien. (*Jones* v. *Allert, et al.*, 161 Cal. 234, 118 Pac. 794.) The decision and reasoning of Judge Henshaw, in *Jones* v. *Allert, supra,* we find especially interesting, in that it is applicable to both phases of the case under consideration.

As a general proposition, we find the trend of modern decisions to be in disapproval of the doctrine of a vendor's lien in cases, where that subject has been passed upon by courts of last resort in the various jurisdictions in the United States, where the facts disclosed that the vendor relied upon separate security. In this state we find the statute silent upon the subject, but this court, in at least one case (*Reese* v. *Kinkead, supra*), recognized the right of a vendor's lien, but the conditions surrounding that case, as will be observed, were entirely different from the one under consideration. The policy of our legislation generally has been to make the title of real estate as simple and easily understood as possible, and has been along lines to discourage all secret or implied equities not of record. In fact, the general trend of modern legislation has been to require incumbrances and conveyances alike to be made matters of public record where they affect realty. The doctrine of equitable lien unexpressed by record title is little suited to modern conditions under our existing laws, and is not entirely essential to the interest of justice. There might be instances, however, where, as between the parties to the transaction, a gross injustice might be worked upon the vendor, where, by means of some fraud or trick, he might be deprived of his estate or the proper recompense therefor, in which case the right of equitable lien should operate, if it be shown that the vendor relied entirely upon the estate, or the credit and honor of the vendee, and no separate security was taken for all or part of the purchase money. The conditions surrounding this case under consideration are clearly such as to dispel all presumption that a vendor's lien should apply.

5, 6. If the plaintiffs are not entitled to a vendor's lien, are they entitled to personal judgment against the defendants, and, if so, should the judgment apply against

defendants jointly, or is one of the defendants amenable to the judgment to the exclusion of the other? In approaching this subject of personal judgment in this case we must first consider whether or not the certificate of deposit in question was accepted by Jensen *pro tanto* of that portion of the purchase money represented by the face of the certificate, or was it taken as security only? In the case of *Roberts, Johnson & Rand Shoe Co. v. McKim*, 34 Nev. 197, this court, speaking through Justice Norcross upon a subject very much analogous to the one under consideration, said: "Unfortunate as it may be for the individual who has money on deposit in a suspended or insolvent bank, he can only discharge his indebtedness with unpaid checks upon such a bank upon a clear showing that the one to whom he is indebted at the time accepts such check absolutely and unconditionally in discharge of the debt, and even then, to be binding, doubtless it would have to appear that the checks were of some value."

It is undoubtedly true that the check in question in this case was good in so far as being worth its face value at the time of the transaction, but it did not mature until a date subsequent to the suspending of the institution, out of which this and so many other similar unfortunate instances have accrued. The facts disclosed from the testimony taken at the trial are exceedingly conflicting. Five witnesses in all were sworn, who gave testimony with reference to the transaction. Mathias Jensen and Anna Jensen, his wife, testified in substance that they took the certificate only as security; while, on the other hand, Peter P. Wilslef and his wife testified in substance that the certificate was tendered and accepted in full payment for that portion of the purchase money. The testimony of H. C. Jepsen, county clerk and disinterested party, throws but little light upon the subject. The trial court found that the certificate of deposit issued by the State Bank and Trust Company was taken by Jensen only as security for a part of the purchase money. The rule of this court has universally been that, where the facts are conflicting, the judgment of the trial court

should not be disturbed.   The findings of the trial court being to the effect that the certificate was taken only as security for the portion of the purchase money, the judgment must stand against Niels P. Wilslef, the indorser of the certificate, by reason of the fact that having indorsed the certificate in blank he thereby made himself amenable to the general law governing such indorsements.

7. As a general principle of law and by a strong line of authorities, certificates of deposit have been held to be promissory notes and to have the same force and effect as a promissory note.   Moreover, indorsers on certificates of deposit have generally been held bound by the same rules as those that apply to the indorser upon a note. (1 Parsons, Bills & Notes, p. 26; *Bank of Orleans* v. *Merrill,* 2 Hill, 295; *Pardee* v. *Fish,* 60 N. Y. 269, 19 Am. Rep. 176.)

8-10. It is a well-settled rule, the general principle of which is almost universally applied, that one who indorses a bill binds himself to pay it at its maturity, if on presentation it is not accepted according to its purport, providing he is notified of the dishonor.   One who indorses an accepted bill or a note is bound to pay it if it be not honored or paid by the acceptor or maker.   Should the drawer or maker refuse to honor or pay the bill or note, the reasons for dishonor or nonpayment constitute no defense of which the indorser may avail himself. One who indorses in blank engages to meet the obligation when he has been duly notified of its dishonor.   Any indorser in blank as a general rule warrants the solvency of the parties; he also warrants that it will be paid either by the maker or by himself.   (Daniel's Neg. Inst. 671.) By his act in indorsing the certificate of deposit in blank, Niels P. Wilslef warranted thereby that the instrument was genuine in all respects, and was in reality what it purported to be; that he had a good title to it; that all prior parties had capacity to contract; that the instrument at the time of his indorsement was valid and subsisting, and, in addition, he engaged that on due presentation it would be accepted or paid, or both, according to its tenor, and that, if it were dishonored and

the necessary proceedings for dishonor should be taken, he would pay the amount thereof to the holder or any subsequent indorser who might be compelled to pay it. (Rev. Laws, 2612, 2613; sections 65, 66, Neg. Inst. Act, as approved March 14, 1907, c. 62.)

11. The general rule is that, where an indorser contends that his indorsement was understood to be other than a warranty of payment, he must bear the burden of proving the same. No attempt was made on the part of either of the plaintiffs in this case to prove any understanding or agreement that would relieve Niels P. Wilslef of his obligation under the law as an indorser in blank. The evidence as produced at the trial discloses that Niels P. Wilslef was not present either at the first or second meeting of the parties, and in fact he does not appear to have taken any part in the transaction whatever, except to have indorsed the certificate at some previous occasion. The certificate was turned over by Peter P. Wilslef to Jensen with the indorsement of Niels P. Wilslef. No agreement that might be entered into between Peter P. Wilslef and Jensen in the absence of Niels P. Wilslef could have either been binding upon him or have relieved him from the obligation which the law imposes upon an indorser in blank.

12. We must next consider whether personal judgment should be rendered against Peter P. Wilslef, who was not an indorser of the certificate. The evidence in this case is clear upon one point, namely, that Peter P. Wilslef negotiated for the purchase of the estate in question, paid the money "to bind the bargain" on the 6th day of June, exhibited the certificates that he proposed to turn over to respondent, and later delivered the certificates to respondent, and the deed was delivered to him. The deed was by mistake made to Peter P. Wilslef, but he was in fact the real purchaser, and would be so considered, even though the deed had been made to Niels P. Wilslef. (*Jones* v. *Allert, et al.*, 161 Cal. 234, 118 Pac. 794.)

The general course of conduct of Peter P. Wilslef evidences that he was the real purchaser, and we think

the judgment of the lower court in so far as it renders a personal judgment against these appellants was sufficiently sustained.

From the foregoing, it follows that the judgment of the lower court in so far as it decreed a vendor's lien to the plaintiffs must be reversed, and that in all other respects the judgment should be affirmed.

It is so ordered.