## TONNAR *v.* WADE.*

(Division B. March 18. 1929. Suggestion of Error overruled May 6, 1929.)

[121 So. 156. No. 27685.]

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2780, p. 809, n. 32; Continuances, 13CJ, section 4, p. 123, n. 14; Elections, 20CJ, section 37, p. 76, n. 42; section 39, p. 77, n. 66; section 194, p. 163, n. 90, 91; section 199, p. 166, n. 33; section 389, p. 269, n. 17; Evidence, 23CJ, section 1858, p. 76, n. 73. On the question as to when acceptance of check *held* to be payment and extinguishment of debt, see annotation in 10 L. R. A. (N. S.) 537; 35 L. R. A. (N. S.) 35-37; **21 R. C. L. p. 70.**

*Montgomery & Montgomery, Brunini & Hirsch* and *Thames & Thames,* for appellant.

*Percy & Percy* and *Farish & Bell,* for appellee.

728

Argued orally by *John Brunini* and *M. B. Montgomery,* for appellant, and *D. S. Strauss* and *H. P. Farish,* for appellee.

ANDERSON, J. Appellee instituted this proceeding under section 4186, Code of 1906, section 8077, Hemingway's 1927 Code, in the circuit court of Issaquena county, to contest the election of appellant to the office of Mississippi levee commissioner for that county. There was an issue made up and tried, as provided by the statute, resulting in a directed verdict and judgment for the appellee. From that judgment, the appellant prosecutes this appeal.

The questions presented for decision are: Whether the court erred in denying the appellant's application for a continuance; whether appellee was a qualified elector; and whether the appellant or the appellee received a majority of the legal votes cast in the election.

On May 8, 1928, an election was held in Issaquena county under the provisions of chapter 12, Laws of 1928, for a commissioner of the Mississippi levee district, in which election appellant and appellee were candidates for the office. Less than two hundred votes were cast in the election. The returns from the election judges at the different voting precincts showed that appellee had received a majority of the votes cast. The county election commissioners met at the county seat and canvassed the returns, and declared that the appellant was elected by one vote, that the appellant received eighty-three votes, and the appellee eighty-two. Thereupon the appellee filed his petition, under the statute above referred to, to

contest the election. There was a trial at the June term, 1928, of the circuit court of Issaquena county, resulting, as stated, in a verdict and judgment for appellee.

When the cause came on for hearing, appellant made an application to the court for a continuance upon the ground that a continuance of the cause was necessary in order to enable him to properly prepare his defense; the application was overruled, and appellant assigns and argues as error that action of the court.

The granting of a continuance of a cause rests in the sound discretion of the trial court, and, unless there has been a manifest abuse of that discretion, the cause will not be reversed upon the ground that a continuance has been refused. The party complaining of the action of the court in that respect must show that the refusal to continue denied him a substantial right; in other words, that the action of the court was harmful. We are of the opinion that the appellant has not met these requirements of the law. The completed record of the trial in this cause fails to show that, if the appellant had been granted a continuance, the result would probably have been different. As stated, there were less than two hundred votes cast in the election. The better part of two days was consumed in the trial. During the trial, the appellant had access to the ballot boxes and poll books used in the election, as well as the registration books. His defense appears to have been well planned and well conducted. There was nothing to show that delay in the trial would have developed any additional facts favorable to appellant's defense.

Under section 250 of the Constitution, only qualified electors, and no others, are eligible to public office. Section 241 of the Constitution prescribes the qualifications of an elector, and provides, among other things, that he must have paid "on or before the first day of February of the year in which he shall offer to vote, all taxes which may have been legally required of him, and which

he has had an opportunity of paying according to law, for the two preceding years,'' etc.

Appellant contends that, when the election took place, the appellee was not a qualified elector, because he had not, on or before the 1st day of February, 1928, the year in which the election was held, paid all the personal taxes which were legally required of him for the previous year. The evidence showed that appellee's personal taxes for 1927 were seventeen dollars and eleven cents, and that on the 1st day of February, 1928, there was issued to him, in due form, by the tax collector of Issaquena county, a receipt therefor. In other words, the records of the office of the tax collector, kept in the manner required by law, showed that, on the 1st day of February, 1928, appellee had paid his personal taxes. Appellant undertook to show, however, that the payment of these taxes was not made in legal tender currency, but by check drawn by appellee on his bank in favor of the tax collector, which check was not cashed by the bank until the 9th day of February, 1928. Appellee testified that he did not remember whether he paid the taxes in cash, or by check, but that he did remember that he paid them the 1st day of February, 1928. Birdsong, the tax collector, testified to the same effect. On cross-examination, the appellee admitted that the taxes might have been paid by check instead of cash, and that his bank account, showing that the bank cashed a check for seventeen dollars and eleven cents on the 9th day of February, 1928, the exact amount of the taxes, probably evidenced that he paid his taxes by check instead of in cash.

Appellant's position is that taxes are payable in money only, and, if paid by check, the payment does not take place until the check is cashed, and that there was sufficient evidence to raise an issue for the jury to determine the question, namely, whether appellee's personal taxes were paid in money or by check which was cashed

after the 1st day of February. To sustain that contention, appellant relies upon the case of *Moritz* v. *Nicholson*, 141 Miss. 531, 106 So. 762, and authorities from other states along the same line. It was held in the Moritz case that the failure of the tax collector to present a check given him in payment of taxes, which was not paid because of the failure of the bank on which it was drawn, did not relieve the taxpayer; that the acceptance of the check by the tax collector in payment of the taxes of the drawer, at most, was only a conditional payment of the taxes, and that the taxes were not paid until the check was paid, and, if the check was never presented, or if presented and dishonored, the lien for the taxes on the property of the taxpayer continued; that in such a case the tax collector accepted the check of the taxpayer for the convenience of the latter, and if, for any reason whatever, whether through the fault of the tax collector, or other cause, the check was never presented, the taxes and the lien therefor continued. Appellant argues that the Moritz case is conclusive in favor of his contention. It will be noted that, in the Moritz case, the check for the taxes had never been cashed. The question whether, if it had been cashed, the payment of the taxes would have related back to the date of the check, was therefore not before the court, and was not decided. The question alone in that case was whether the payment of the taxes by check of the taxpayer discharged such taxpayer from further liability for taxes where the check was never cashed. That is not the question here, for there is no dispute in the evidence that, if the appellee paid his taxes by check, the check was cashed and the taxes were thereby discharged. There was no further liability therefore on the part of appellee. Conceding that appellee paid his taxes by check dated February 1, 1928, which the tax collector accepted, and which check was not cashed until the 9th day of that month, did the payment in that manner have the effect of discharging the taxes as of the

date of February 1, 1928? We think this question must be answered in the affirmative. In the Moritz case, it was held that the payment of taxes by check was a conditional payment. The general rule is that a check becomes absolute payment of a debt when the check is paid on presentation, and, on such payment, the debt is deemed to have been discharged from the date the check was given. 21 R. C. L., p. 70, section 69. We see no reason why that principle should not apply to the payment of taxes, notwithstanding, as held in the Moritz case, that payment of taxes by check is no payment at all until the check is paid, and that the tax lien continues up to that time. By the giving of a check, the tax obligation and the tax lien are both conditionally discharged, the condition being the payment of the check, and, when the check is paid, a discharge of both the tax obligation and the tax lien relates back to the date of the check. We think this view more reasonable than that contended for by the appellant. It is a matter of common knowledge that a very large proportion of the taxes paid in this state are paid by checks of the taxpayers, and are paid late in January, and that many of these checks do not reach the banks on which they are drawn to be cashed until the early days of February. A rule that would disfranchise such a great number of citizens of the state should be clearly the most reasonable rule. When taxes are paid on or before the 1st day of February by check, and the check cashed, the money goes into the public treasury, so what harm can result from such a method? We see none. If the check is never paid, the obligation still exists, and the tax lien goes with it.

Appellant contends that appellee was not a qualified elector when the election took place, because he had not, on or before February 1, 1928, paid the taxes legally required of him on six hundred fifty acres of land in Issaquena county, in which he owned an undivided one-sixth interest. The facts on which that contention is based are

as follows: In 1924, L. T. Wade, Sr., father of appellee, died intestate, leaving as his sole surviving heirs at law his wife and five children, appellee being one of the five children. Appellee, his mother, brother, and three sisters thereby became tenants in common in the land, each owning an undivided one-sixth interest therein. His mother was appointed administratrix of the estate of her husband, and, when this cause was tried, the administration had not been closed. The appellee admits that the taxes on this land for the year 1927 were not paid on or before February 1, 1928. Appellant argues that these taxes were taxes which the appellee was legally required to pay, and, having failed to do so, was disqualified as an elector. This land was assessed to ''estate of L. T. Wade, Sr.,'' not to his heirs by name who were the owners of the land. Section 4283, Code of 1905, section 8213, Hemingway's 1927 Code, requires that land shall be assessed to the owner, and, if the owner is unknown, then to ''unknown.'' Section 4255, Code of 1906, section 8188, Hemingway's 1927 Code among other things, provides that it shall not be necessary to the validity of an assessment and sale of land for taxes that it be assessed to the owner, and that a sale shall vest title in the purchaser without regard to who may own the land, or whether wrongfully assessed or not. Section 4256, Code of 1906, section 8189, Hemingway's 1927 Code, provides that every lawful tax levied by the state or any of its political subdivisions shall be a debt due by the person or corporation owning the property upon which the tax is levied, whether properly assessed or not, and may be recovered by an action. Appellee contends that, under the due process clause of the state, as well as the Federal, Constitution, the payment of taxes on this land was not legally required of him, because it was not assessed to him, having been assessed to the estate of his father; that due process required, when notice was published

to the taxpayers of the county of the meeting of the board of supervisors at which the assessment rolls would be taken up for examination and approved by the board, that the assessment roll show both the land assessed and the name of the owner.

We do not pass on that question. We deem it unnecessary, because appellee contends that, on another ground, he was not legally required to pay the taxes on the land, which we think is sound. Conceding that the taxes were a valid lien upon the land, appellee contends that the legal liability to pay the taxes thereon was upon the administratrix of the estate of L. T. Wade, Sr., and not on the heirs. The common law with reference to the liability of the lands of a decedent to be sold to pay his debts has been materially changed by our statutes. Section 2056, Code of 1906, section 1796, Hemingway's 1927 Code, among other things, provides that the lands of a decedent shall stand chargeable with payment of the debts of the estate. Section 2068, Code of 1906, section 1811, Hemingway's 1927 Code, provides that, when the executor or administrator shall discover that the personal property is not sufficient to pay the debts and expenses of the estate, he may file a petition in the chancery court for the sale of the lands of the estate for that purpose, or so much thereof as may be necessary. Section 2070, Code of 1906, section 1813, Hemingway's 1927 Code, provides that the creditors of a decedent, whose claims against the estate are registered, shall have the right to file a petition for the sale of lands or personal property of the decedent for the payment of debts. Section 2071, Code of 1906, section 1814, Hemingway's 1927 Code, provides that the lands of a decedent may be leased to pay the debts of the estate. Section 2075, Code of 1906, section 1818, Hemingway's 1927 Code, provides that, when the estate of a deceased person consists of real and personal property, and it shall be necessary to sell a portion thereof to pay the decedent's debts, the

chancery court, on petition of the personal representative, or the legatees or distributees, being satisfied that it would be to their best interest, may decree a sale of the lands, or a part thereof, in preference to a sale of the personal estate. Section 2104, Code of 1906, section 1848, Hemingway's 1927 Code, requires the executor or administrator to pay all taxes that may be due on the real and personal property belonging to the estate being administered. We hold that, under these statutes, it is the legal duty of the personal representative of a decedent, whose estate is being administered, to pay the taxes on the lands of the estate for the purpose of preserving the lands for the benefit of creditors, as well as for the legatees and distributees, and that the legatees and distributees are not legally required to pay the taxes in the sense of section 241 of the Constitution. *Davis* v. *Blumenberg*, 107 Miss. 432, 65 So. 503, sustains this view. It is true the opinion in that case states that "the taxes on the land constitute a personal debt against the owners thereof," but that statement was not necessary decision in that case. The court proceeds to state further in the opinion, as we now hold, that it was the duty of the administrator to pay the taxes on the land in order to protect the creditors of the decedent in their right to subject the land to the payment of the decedent's debts, and also to protect the rights of the heirs of the decedent in the land.

Appellant contends, further, that the court erred in counting four of the ballots cast for appellee upon the ground that they had on them distinguishing marks, in violation of section 4175, Code of 1906, section 8066, Hemingway's 1927 Code, which statute is as follows:

"Any voter who shall, except as herein provided, allow his ballot to be seen by any person, or who shall make a false statement as to his inability to mark his ballot, or who shall place any mark upon his ballot by which it

can afterward be identified as the one voted by him, or any person who shall interfere or attempt to interfere with any voter when inside the compartment or inclosed place, or when marking his ballot, or who shall endeavor to induce any voter, before voting, to show how he will mark, or after voting how he has marked his ballot, shall be punished by a fine of not less than, twenty-five nor more than one hundred dollars; and the election officers shall cause any person so violating the law to be arrested and carried before the proper officer or tribunal for commitment and trial for such offense.''

One of the four ballots has opposite appellee's name in ink a perpendicular mark, and two crosses instead of one, and between the two crosses there is a little irregular scratch; another has what appears to be four irregular splotches, two near the top and two near the bottom, in addition to a cross-mark opposite appellee's name. These splotches appear to be either from tobacco or blood. Another has opposite appellee's name two crosses instead of one, and the other, in addition to a cross-mark, opposite appellee's name, has about halfway down the ballot an ink splotch which appears to have been dropped from the pen when the voter was preparing to make the cross-mark. Ballots should not be rejected as having distinguishing marks on account of slight irregularities in the manner of marking. It must be clear that the voter intended to mark for identification. Where the ballot contains other than the legal marks, such marks will be presumed to have been innocently or unintentionally made, unless their appearance shows to the contrary. Marks of such a character that may not be used for purposes of identification will not invalidate the ballot. 20 C. J. 163. The body of electors includes, not only well informed and capable voters, but also ignorant, incapable, and careless voters. If a mark is not apparently connected with an effort of the voter to cast his ballot for the purpose of identification; and can be

reasonably explained consistently with an honest purpose on his part, it is not a distinguishing mark. *Hodgson* v. *Knoblauch*, 268 Ill. 315, 109 N. E. 338, Ann. Cas. 1917E, 653; *Church* v. *Walker*, 10 S. D. 450, 74 N. W. 198. In *Kelly* v. *State ex rel. Kierskey*, 79 Miss. 168, 30 So. 49, it was held that a ballot marked with two crosses instead of one opposite the name voted for did not invalidate the ballot. The marks on the ballots in the case at bar, other than the crosses opposite appellee's name, are of such character as show that they were unintentionally made, and not for the purpose of identification. Take the one with the perpendicular mark and two wavering crosses, and another little scratch of the pen —it has every appearance of having been the result of the palsied hand of the voter.

*Affirmed.*