WYLIE *et al. v.* CADE *et al.*

(Division B. Dec. 9, 1935.)

[164 So. 579. No. 31940.]

Shands, Elmore, Hallam & Causey, of Cleveland, for appellants.

Griffing & Taylor, of Shelby, for appellees.

**Griffith, J.,** delivered the opinion of the court.

On the second Tuesday in December, 1934, section 2597, Code 1930, an election was held in the town of Duncan for the selection of municipal officers, including five aldermen. No primary election had been held; but the names of nine persons, including each of the parties to this cause, were presented by petitions to the election commissioners as candidates for aldermen, the said petitions conforming in all respect to the requirements of law. The election commissioners declined to print the name of appellant Wylie on the official ballot, because, in the opinion of the election commissioners, Wylie was not a qualified elector.

Forty-four voters participated in the election. A majority of them desired to vote for Mr. Wylie, and they wrote his name in ink on the blank line left on the ballot and put their cross-mark opposite his name as written, so that he received twenty-three such votes. The election commissioners refused to recognize the votes thus cast for Mr. Wylie and declined to return him as one among the persons elected and for two reasons: First, because he was not a qualified elector; and, second, because it was illegal, as they contended, to write the name of a candidate on the ticket and thus vote for him, there having been no death of any candidate within fifteen days next before the date of the election. It is not neces-

sary to decide the second point, and we take up the first issue as to whether Mr. Wylie was a qualified elector.

On January 31, 1934, Mr. Wylie made out his bank check for the correct amount of his taxes, payable to the county tax collector, and inclosed the same in a letter addressed to the tax collector, the letter reading as follows:

"If it is possible for you to do so I will certainly appreciate it if you will hold the inclosed check for me until about the first of March. I have been in Cleveland a time or two lately and wanted to ask you about this but did not see you and Mr. Dickson told me that you alone could handle for me, so I am addressing you personally for that reason.

"Assuring you that it will be a great favor and with kindest regards, I am," etc.

To this letter the tax collector replied at once that he could not hold the check, but without any other statement or comment. He did not return the check, nor did he state what he intended to do with it. Apparently, Mr. Wylie assumed that the tax collector intended to deposit the check for collection in due course and without any delay other than the delay incident to checks handled in due course; but when he received his next statement from his bank, with the canceled or paid checks, he observed that the check for the taxes was not among them. It is not definitely shown when this bank statement was received, but the witnesses are in accord that Mr. Wylie did not take up the matter further with the tax collector's office until on or about April 30, 1934. Upon his doing so on that date, it was discovered, upon a search in the tax collector's office, that nothing had been done with the check, that it still remained among some of the papers in the tax collector's office, and that no tax receipt had ever been issued on it. However, on that day, to-wit, on April 30, 1934, a tax receipt was issued to Mr. Wylie back dated as of date February 1, 1934,

and the check was deposited for collection and was paid on May 7, 1934.

Appellant Wylie contends that under the above facts and under the holding of this court in Tonnar v. Wade, 153 Miss. 722, 121 So. 156, 158, he was not disqualified as an elector. But that case must be read in the light of the facts there present. The facts there present were that Wade delivered his check unconditionally to the tax collector on February 1st and then and there received his tax receipt on that day and so dated. It was not a tax receipt issued on a far subsequent day and back dated, as is the case now before us. And the facts further show that Mr. Wade's check was deposited in the due course of business and was paid in due course on an early date, to-wit, on February 9th. The court held that under such a delivery and acceptance of the check on February 1st and the issuance of a tax receipt on the day the check was received and the deposit and clearance to payment of the check in due course without delay was the substantial equivalent of a payment on February 1st, and that there was no delinquency. But there is a material difference in that case and the one now before us, as the statement of facts of the present case has disclosed.

The dominant purpose of the people of this state in the adoption of the Constitution of 1890 was to secure and to preserve to those "superior in spirit, in governmental instinct, and in intelligence" (Ratliff v. Beale, 74 Miss. 247, 263, 20 So. 865, 867, 34 L. R. A. 472; Williams v. State of Mississippi, 170 U. S. 213, 222, 18 S. Ct. 583, 42 L. Ed. 1012) a permanent supremacy in the control and administration of our governmental affairs; and inasmuch as those who possess the superior qualities mentioned are, and always will be, by far the more forethoughtful, and therefore the more apt, to truly fulfill in advance those reasonable requirements prescribed as necessary to be so fulfilled in order to be a qualified elector, it was established as one of the principal pillars in that constitutional structure, in furtherance of the domi-

nant purpose aforesaid, that to be qualified to vote, the voter shall have paid, on or before the 1st day of February, of the year in which he or she shall offer to vote, all taxes due by the voter for the two preceding years—now by a recent amendment, all poll taxes for said years. We do not intend to permit, so far as within our rightful power to prevent, any relaxation of that constitutional requirement so far as its spirit and purpose is concerned, nor in any substantial respect. Nor shall we permit any administrative course of practice to prevail which may become the vehicle by which the requirement may be substantially circumvented.

Nevertheless, we have been constrained to recognize, as we did in Tonnar v. Wade, supra, that "a very large proportion of the taxes paid in this state are paid by checks of the taxpayers, and are paid late in January, and that many of these checks do not reach the banks on which they are drawn to be cashed until the early days of February." Consequently, we are willing to say and to hold that when the bank check of the taxpayer has been actually delivered into the hands of the tax collector on or before February 1st, and is delivered and tendered unconditionally without any request or suggestion, then or at any other time, that said check be handled otherwise than strictly in due course and without any favoritism of any character to the taxpayer or any expectation thereof, in respect to the time of presentation of the check, and the check is accepted by the tax collector upon its receipt without any condition or expectation thereof except solely the condition as its actual payment upon presentation to the bank in due course, and the check is handled with reasonable promptness, so that in due course of business it is deposited with reasonable promptness, and without any favoritism in that respect, and is actually paid upon its first presentation to the bank upon which it is drawn, this will be sufficient; and that upon payment by the bank upon such

presentation, the payment will relate back to the date of the delivery of the check to the tax collector, as was held in Tonnar v. Wade. But beyond this we cannot go; for to go further would open the door to all sorts of devices for favoritism, for the back dating of tax receipts, and for nearly every other evil that the constitutional requirement aforementioned was designed to prevent.

It follows from the above that the appellant Wylie was not a qualified elector at the time when the election commissioners declined to print his name on the ticket and when they declined to recognize as legal the votes cast for him as aforesaid. And not being a qualified elector, he was not qualified to hold the office had he been declared elected thereto. Section 250, Constitution 1890. He could not have maintained a quo warranto to obtain the possession of the office. Andrews v. State ex rel. Covington, 69 Miss. 740, 13 So. 853. And since he would have had no right to hold the office or to secure its possession had he been elected thereto, it follows that he had no real right to be a candidate therefor, and no substantial right to complain in any court of the adverse actions of the election commissioners in respect to his said candidacy.

There is no dispute that the other three appellants, Brown, Griffin, and Smith, were qualified electors, and it is admitted that their names were lawfully printed upon the official ballots. Brown and Griffin received twenty-five votes each, and Smith twenty-six votes, a majority for each of them. But the election commissioners threw out nearly all the votes cast for them, because on the ballots so thrown out the voters had written the name of Mr. Wylie and had voted for him; wherefore the commissioners held that this constituted a distinguishing mark which avoided the entire ballot so marked. The trial court upheld this contention, which we think was erroneous. So far as this record discloses, the voters who thus wrote the name of Mr. Wylie on these ballots were

making an honest effort to vote for him and were not attempting thereby to indicate who voted the ballots so marked. This ought not to require the rejection of the ballots as to the candidates for whom these voters did express their choice in the manner required by law. Hennessy v. Porch, 247 Ill. 388, 391, 93 N. E. 290. In Tonnar v. Wade, supra, 153 Miss. 722, at page 736, 121 So. 156, 160, this court said: "Ballots should not be rejected as having distinguishing marks" unless "it . . . be clear that the voter intended to mark for identification. . . . If a mark is not apparently connected with an effort of the voter to cast his ballot for the purpose of identification, and can be reasonably explained consistently with an honest purpose on his part, it is not a distinguishing mark." Appellants Brown and Griffin and Smith were elected and the commissioners and the court should have so declared and adjudged.

Affirmed as to Wylie; reversed and judgment here for the other appellants.