A. R. RUPPERT, N. L. RUPPERT, AND JOSEPH HOFFMAN, DOING BUSINESS AS THE A. R. RUPPERT PLUMBING AND HEATING COMPANY, AND A. R. RUPPERT, N. L. RUPPERT, AND JOSEPH HOFFMAN, DOING BUSINESS AS THE A. R. RUPPERT PLUMBING AND HEATING COMPANY, A CO-PARTNERSHIP, AND A. R. RUPPERT PLUMBING AND HEATING COMPANY, A NEVADA CORPORATION, APPELLANTS, v. EDGAR EDWARDS, RESPONDENT.

No. 3597

March 29, 1950.                                   216 P.2d 616.

*Taylor & Gubler*, of Las Vegas, for Appellants.

*George E. Franklin, Jr.*, of Las Vegas, for Respondent.

## OPINION

By the Court, HORSEY, C. J.:

In the instant case the defendants and appellants have appealed from the judgment and from the district court's order denying their motion for a new trial.

It appears advisable, in order clearly to present the factual situation and the questions of law involved, that we embody herein, first, the opinion of the court below, which is as follows:

"The complaint in this action, after reciting the residence of the plaintiff and defendants, sets out that on or about the 10th day of July, 1947, the said defendants

caused to be filed in the Office of the County Recorder of Clark County, Nevada, a notice of lien against certain real property of the plaintiff described in the complaint. It appears that the lien arose out of the alleged failure of the plaintiff to pay the defendant for certain labor and material incurred in the installation of certain plumbing work in and about the premises of the plaintiff, that said work was done pursuant to a contract entered into by and between the plaintiff and defendant, that the lien purported that there was a balance due of $2382.81, that the sum of money remained unpaid and due the defendants from the plaintiff. Thereafter negotiations were entered into by and between attorneys of the plaintiff and defendant, George E. Franklin, Jr., Esquire, appearing as attorney for the plaintiff, and Taylor and Gubler, Esquires, attorneys for the defendant. It appears that on or about the 24th day of October, 1947, the plaintiff tendered to the said firm of attorneys, Taylor and Gubler, as the agent of the defendants, the sum of $1900 in full satisfaction and accord of all claims of whatever kind and nature which existed by and between said defendant and said plaintiff by reason of said work and material furnished and in satisfaction of said lien recorded in the Office of the County Recorder of Clark County, Nevada. It appears that at that time, to-wit, on the 24th day of October, 1947, it was agreed that the defendants would execute appropriate release discharging mechanic's lien heretofore filed by said company against the property of the plaintiff, that no release was filed and as a result this action was brought in accordance with Section 3750, Volume 2, Nevada Compiled Laws 1929, said section reading as follows:

" 'Satisfaction And Discharge Of Lien. The claimant of any such lien filed as aforesaid, on the payment of the amount thereof, together with the costs incurred and the acknowledgment of satisfaction, shall, at the request of any person interested in the property charged therewith, enter or caused to be entered an acknowledgment of

satisfaction of the same (of) record within ten days from the request, and for failure of the claimant to enter satisfaction within the time, shall forfeit and pay to the person making the request the sum of twenty dollars per day until the same shall be entered, to be recovered in the same manner as other debts.'

"Under said section the plaintiff claims that 518 days had elapsed since the said defendants, in response to the request of the said plaintiff, promised to enter acknowledgment of satisfaction, and that the said defendants had, during the said 518 days period, failed and refused, and continued to fail and refuse, to cause such acknowledgment of satisfaction to be entered in the manner prescribed by law. The complaint therefore prayed damages for each of said 518 days at the rate of $20 per day, in accordance with the statute, or a total of $10,360 in costs.

"To this complaint the defendant filed answer admitting the allegations of paragraphs 1, 2 and 3 of the complaint, and they set up as a defense denying paragraphs 5, 6, 7, 8, 9 and 10 of the complaint, denying in their answer that the instrument that was filed purported to be a lien, was not, in fact, a notice of lien at all.

"From the evidence it appears that a contract was entered into by and between the parties, plaintiff and defendants, for the performance of certain labor and the furnishing of certain material in the installation of certain plumbing in the premises belonging to the plaintiff, that the plumbing to be done in accordance with the contract was completed, in accordance with the testimony of the defendants, and thereafter the lien was filed in the office of the County Recorder of Clark County, Nevada, on the 10th day of July, 1947.

"On the 23rd day of August, 1947, a letter was written to the plaintiff by Mr. V. Gray Gubler, of the firm of Taylor and Gubler, in which he called to the attention of the plaintiff the fact that there was a balance due his client, the defendant, in the sum of $2382.81 plus

interest and attorneys fees, as provided in the contract with instructions that they would file suit unless satisfactory arrangements for settlement could be worked out and in said letter it is stated 'otherwise it will be necessary for us at the earliest possible time thereafter to file suit for foreclosure of mechanic's lien on your motel property.' It will be seen by this that notwithstanding their answer denying that the instrument was a lien, the firm did recognize it as a lien on the 23rd day of August, 1947, as set out in said letter.

"The Court is of the opinion that the instrument filed was a lien, and now so holds. Again, in a letter from the A. R. Ruppert Plumbing Company, by Thomas J. Palmer, the following language is used 'Also, we will instigate foreclosure proceedings on the mechanic's lien now recorded against the property.' Thus it will be seen that the company itself deemed that the instrument filed was a lien.

"Pursuant to the said lien, and pursuant to the letter of Taylor and Gubler to the plaintiff, through his attorney, George E. Franklin, Jr., with Taylor and Gubler, by and through V. Gray Gubler, attorney for the defendants, and the plaintiff paid to the said V. Gray Gubler by and through his attorney, George E. Franklin, Jr., the sum of $1900 and received from said V. Gray Gubler, as agent for the said defendant, a receipt acknowledging receipt of two checks, aggregating $1900, and agreeing that as soon as said checks, and each of them, had cleared, the said defendant company would execute appropriate release discharging mechanic's lien filed by said company against the property of the said plaintiff.

"Again it will be seen that the attorneys representing the defendant recognized the instrument so filed as a lien.

"The defendants raised the question that the agreement was as soon as the said checks, and each of them, had cleared, the company would execute appropriate release discharging mechanic's lien heretofore filed by said company against the property of the plaintiff. This

receipt was dated October 24, 1947, and the question now before the Court is whether or not the two checks constitute payment.

"In the opinion of the Court the two checks would constitute payment and settlement in full of said claim, and thereafter within ten days, as set out in the statute, the defendant itself, or through its attorneys, should have entered satisfaction and discharged said lien.

"Then again let us presume that the words of the letter or receipt are to be strictly construed, that is, the checks and each of them should clear before the obligation of discharging the mechanic's lien would attach to the defendant. One check for $300 was drawn on the First National Bank of Nevada and was dated the 23rd day of October, 1947, and shows it was paid on the 24th day of October, 1947. The other check for $1600 was dated the 23rd day of October, 1947, and cleared through the National Bank of Nevada on October 27, 1947. Thus it will be seen that the amounts were paid within ten days after they were tendered as payment of the claim.

"The Court is of the opinion that within ten days after the 24th day of October, 1947, the defendant having during that time been paid in full of all demands, should have entered an acknowledgment of satisfaction of the lien of record, said request having been made so to do by the plaintiff and an agreement having been made by the defendant so to do on the 24th day of October, 1947.

"From the evidence it appears that the lien was filed July 10, 1947, that the lien was satisfied on October 24, 1947. Suit could have been brought on or before six months after July 10, 1947, or on or before January 10, 1948, and if suit had not been brought on or before said date, then the lien would have been of no value. In accordance with the statute the lien should have been discharged ten days after October 24th, or November 3, 1947, and inasmuch as the lien itself would have expired on January 10, 1948, two months and seven days, or 67 days, elapsed after the defendant was requested by plaintiff to release said lien, therefore the Court is of the

opinion that there is due the plaintiff for the failure of the defendant to enter an acknowledgment of satisfaction of said lien in the sum of $1340.

"Judgment will be entered in favor of the plaintiff and against the defendant for the sum of $1340, together with costs and interest from this date until paid.

"Dated this 28th day of September, 1949.

"A. S. Henderson

"District Judge."

It is apparent that there is little, if any, serious controversy or contention relative to the essential facts. The entire controversy revolves around the proper interpretation and construction of certain principles of law which are applicable to the factual situation involved in the instant case. Thus, it is believed that the following will serve to bring out clearly the legal situation with which the court is confronted herein. We will, therefore, copy, in part, alleged error No. 1, the principal of the appellants' alleged six assignments of error. Such alleged error No. 1 is captioned, "The Evidence Is Insufficient to Support the Judgment," and, commencing on page 2, in line 22, and continuing to page 6, line 12, of appellants' opening brief, same is, in part, as follows:

"The Complaint (Paragraphs VII and VIII) alleges that on the 24th day of October, 1947, the respondent tendered to the agent of the appellant, A. R. Ruppert Plumbing and Heating Company, a Co-Partnership, and that the Co-Partnership accepted in full satisfaction of all claims on account of the said lien the sum of One Thousand Nine Hundred ($1,900.00) Dollars; that then and there respondent requested of the appellant and the appellant agreed to and promised to record an acknowledgment and satisfaction of the said lien.

"The evidence shows (Record, Page 24) that an accord was reached by the terms of which the respondent would pay to the appellants the sum of One Thousand Nine Hundred ($1,900.00) Dollars in full settlement of appellants' claim; that thereupon respondent gave to his attorney, for delivery to attorneys for appellants, two

(2) checks dated October 23, 1947, one (plaintiff's exhibit 6, record, page 33) in the sum of Three Hundred ($300.00) Dollars drawn upon the First National Bank of Nevada, Las Vegas Branch, and one in the sum of One Thousand and Six Hundred ($1,600.00) Dollars (plaintiff's exhibit 5, record, page 33) drawn upon the Compton National Bank at Compton, California; that thereupon and on the 24th day of October, 1947, these two (2) checks were delivered by the attorney for the respondent to the attorneys for the appellants, for which a Receipt was given (plaintiff's exhibit 7, record, page 38), which was in words and figures as follows:

" 'RECEIPT

" 'Received from George E. Franklin, Jr., attorney for Mr. Edgar Edwards, General Delivery, Las Vegas, Nevada, check in the sum of Three Hundred ($300.00) Dollars, dated October 23, 1947, drawn on First National Bank of Nevada, Las Vegas Branch, Las Vegas, Nevada, and check in the sum of One Thousand Six Hundred ($1600.00) Dollars, dated October 23, 1947, drawn on Compton National Bank, Compton, California, as conditional payment in full of all claims of A. R. Ruppert Plumbing & Heating Company against said Edgar Edwards.

" 'It is hereby agreed that as soon as said checks and each of them have cleared, A. R. Ruppert Plumbing & Heating Company will execute appropriate release discharging mechanic's lien heretofore filed by said company against the property of Mr. Edgar Edwards described as Lots One (1), Two (2), Three (3) and Four (4), Arrowhead Addition to the City of North Las Vegas, Clark County, Nevada.

" 'Dated this 24th day of October, 1947.

" 'A. R. Ruppert Plumbing & Heating Company

" 'By V. Gray Gubler

of Taylor & Gubler, Attorneys for said A. R. Ruppert Plumbing and Heating Company'

"It is obvious from such receipt given by Taylor & Gubler that it was conditioned upon the checks clearing (said receipt being plaintiff's exhibit 7, record, page 38), and it was agreed in the said receipt that upon the checks clearing, the appellants would execute an appropriate release discharging the mechanic's lien theretofore filed. Thus it will be seen by the express terms of the receipt, the delivery of the checks did not constitute payment, unless and until the checks cleared. It appears that the check in the sum of Three Hundred ($300.00) Dollars drawn on the First National Bank of Nevada, Las Vegas Branch, by its endorsement thereon (plaintiff's exhibit 6, record, page 33) cleared on October 24, 1947, but the check in the sum of One Thousand Six Hundred ($1,-600.00) Dollars drawn on the Compton National Bank, Compton, California (plaintiff's exhibit 5, record, page 33) cleared the Compton Bank three (3) days later or October 27, 1947, and the record does not reveal when the credit became final at the First National Bank of Nevada, Las Vegas Branch, but was essentially on a date later than October 27, 1947. Let us give the respondent the benefit of the assumption that the One Thousand Six Hundred ($1,600.00) Dollar check cleared on the 27th for the purposes intended by the receipt. This was three (3) days after the delivery of the checks to counsel for appellants, at which time the check cleared, and payment was actually made under the terms of the receipt.

"Section 3750, N.C.L.1929 provides as follows:

" 'The claimant of any such lien filed as aforesaid, on the payment of the amount thereof, together with the costs incurred and the acknowledgment of satisfaction, shall, at the request of any person interested in the property charged therewith, enter or cause to be entered an acknowledgment of satisfaction of the same (of) record within ten days from the request, and for failure of the claimant to enter satisfaction within the time, shall forfeit and pay to the person making the request the

sum of twenty dollars per day until the same shall be entered, to be recovered in the same manner as other debts.'

"Thus it is seen that, before a penalty may be imposed under the provisions of this statute, there are three (3) conditions precedent:

"1. The payment in satisfaction of the lien, together with costs incurred;

"2. The acknowledgment by the claimant of satisfaction; and

"3. The request of the person interested that the acknowledgment of satisfaction of record be made after payment of the debt.

"Paragraph VII of the Complaint alleges that payment was made on the 24th day of October, 1947, which is untrue according to record. Paragraph VIII of the Complaint alleges that thereupon (that is, October 24th):

" 'and the said agent of the said defendant in writing agreed to and promised the said plaintiff to cause to be recorded in the form and manner provided for in Section 3750, N.C.L., 1929, an acknowledgment and satisfaction of the lien recorded as aforesaid and the satisfaction of the claim of the said defendants against the said plaintiff as aforesaid.'

"(Note that it does not allege that a demand was made of the appellants, but alleges the appellants' promise.)

"The testimony upon the question of demand appears at record, page 27, as follows:

" 'By Mr. Franklin: Q. Upon the payment—tender of checks to Attorney Franklin did you, on or about the 24th day, or on the 24th day of October, 1947, have occasion to have a conversation with one Jack Swan?

" 'By Mr. Edwards: A. I did.

" 'Q. How was that—in what manner was that conversation effected? A. I called him up and told him I had paid that lien off.

" 'Q. Called him on the phone? A. Called him on the phone and told him I paid that lien off, remove the lien, I don't like the lien on my property.

" 'Q. What date was that? A. He says all right. That was the next day, I believe, after I paid it.

" 'Q. That would be the 24th day of October? A. Then I asked him if he would send somebody out there to see what is the matter with the plumbing and he said he would.'

"Thus it shows conclusively that respondent gave his checks to his attorney on the 23rd day of October, on the 24th they were delivered to attorneys for appellants, and a receipt therefor given, but it does not appear anywhere in the record that any demand was made for the removal of the lien after the 24th of October, at least two (2) days prior to the payment and satisfaction of the debt. Thus it is seen that two conditions precedent required by Section 3750, N.C.L. are wanting, to wit:

"1. The acknowledgment of satisfaction (the receipt of the 24th of October was a conditional satisfaction and not absolute), and

"2. The demand after payment and satisfaction that the acknowledgment of satisfaction be entered of record."

Further, on page 6 of appellants' opening brief, the appellants have urged their contention that: "By the great weight of authority it is held that a draft or bank check in the absence of an express or implied agreement to that effect, is not a discharge of the debt, the presumption being that the draft or check is accepted on the condition that it shall be paid."

And at that point, on said pages 6 and 7 of the said opening brief, appellants have quoted from the text of 40 Am.Jur., on page 763, as follows: "Debtor's Draft or Check as Payment—Generally—With the exception of a few jurisdictions, the authorities are unanimous in supporting the rule that the giving of a draft or bank check by a debtor for the amount of his indebtedness to the payee is not, in the absence of an express or implied agreement to that effect, a payment or discharge of the debt, the presumption being that the draft or check is accepted on condition that it shall be paid. On the same principle, a check is not a good legal tender as

against an objection duly made, whether the check is certified or not, subject, however, to the exception that a tender of a check on a deposit with the creditor, payable upon the debtor's order, is not open to objection. The buyer of goods at the time and place of payment should be prepared to pay in lawful money, and has no right to require the buyer to accept a check. The debt is not discharged until the check is paid, or the check is accepted at the bank at which it is made payable. This is true even where the person entitled to receive the money expresses a preference for its payment by check, but does not agree to assume the risk of its being honored. And it is held that the rule applies to obligations arising out of immediate transactions as well as to the payment of antecedent debts. In case the check is not honored on presentation, the original indebtedness for which it was given is not discharged, and the creditor may recover on such indebtedness, without relying on the liability on the check."

Appellants proceed, in said opening brief, page 7, as follows:

"The text cites authorities from thirty-six (36) jurisdictions, including Nevada, Jensen v. Wilslef, 36 Nev. 37, 132, P. 16, Ann.Cas.1914D, 1220.

"What the author terms the minority view is expressed as follows:

" 'Minority View. In some jurisdictions, the giving and receiving of a check, draft, bill, or order is prima facie payment of a pre-existing debt. But the presumption that a check is given and received in payment of a debt is not conclusive, and may be wholly overcome by other evidence, and the intention of the parties, when expressly declared, or when shown by collateral facts and circumstances, will be allowed to prevail.' 40 Am.Jur. 766."

This appears to us as a situation wherein the appellants have indicated as being impliedly imputed to respondent a contention suggesting such minority view above mentioned. There is no such factual situation

presented, based upon facts in the evidence, as to justify such contention, on the part of the appellants, that such minority view should be imputed to respondent.

The "Receipt" furnished by the firm of Taylor & Gubler, as agent for the appellants, and handed to George E. Franklin, Jr., attorney for the respondent, Edgar Edwards, was expressly stated therein to have been conditional, and not absolute. Appellants, in such "Receipt," have correctly stated, "the presumption being that the draft or check is accepted *on the condition that it shall be paid*" (italics ours), and such conditional acceptance by the appellants, as shown by the language of the said "Receipt," was not objected to, but at least, was impliedly acceded to and acquiesced in by the respondent.

In appellants' reply brief, on pages 1 and 2 thereof, they have continued to contend, in relation to Hooker v. Burr, 137 Cal. 663, 70 P. 778, 99 Am.St.Rep. 17, that: "The Hooker of California case cited and quoted by counsel presents a factual situation as far distant from the instant case as the poles. In the Hooker case, the party making a payment called the sheriff and told him he had Ten Thousand Five Hundred ($10,500.00) Dollars in gold with which to pay him. The sheriff responded that he would rather have a certified check. Thereupon, the gold was deposited in the bank by the payer, for which he received a certified check, and took it to the sheriff, by whom the check was accepted. This transaction is quite different from that in the Ruppert-Edwards case where the checks were accepted upon the condition that they be paid."

It is true that in the Hooker case, in view of the facts therein existent, the court considered, under the circumstances of that case to the effect that gold coin had been offered to the sheriff and upon his request and for his convenience a certified check was substituted, that, therefore, the minority rule, rather than the majority rule, was applicable, in the opinion by Henshaw, J., and concurred in by the other justices of the supreme court of

California. The appellants in the instant case have said that: "This transaction is quite different from that in the Ruppert-Edwards case where the checks were accepted upon the condition that they be paid." The appellants have thus indicated, as we view it, a great "ado about nothing," for the reason that it is conceded by all parties in the instant case that the transaction to the effect that the checks involved were paid conditionally and not absolutely was in accordance with the majority rule.

With reference to the opinion in the Hooker case, while, under the particular facts involved there, it followed the so-called minority rule, the opinion fully recognized the majority rule, and made apt quotations from it.

In insisting upon such contention of a difference between the Hooker case and the instant case, appellants, on said page 2 of their reply brief, have proceeded, clearly, to state as follows: "In addition to the foregoing authority, respondent quotes 40 Am.Jur. 775, and contends that that is the rule applicable in this case, and in support of the text, under Notes 19 and 20, there are cases cited from Minnesota, Mississippi, California, New Mexico, New York and Texas, the California case being Hooker v. Burr above criticized, yet counsel terms this the overwhelming weight of authority. We cannot agree with counsel that the cited authorities overwhelmingly outweigh those of thirty-eight (38) jurisdictions, including Nevada, subscribing to the doctrine that the giving of a draft or bank check by a debtor for the amount of his indebtedness is not, in the absence of an agreement, express or implied to that effect, a payment or discharge of the debt. The language of the author in the text heretofore cited in the Appellants' Opening Brief is 'with the exception of a few jurisdictions, the authorities are unanimous in supporting the rule that the giving of a draft or bank check by a debtor for the amount of his indebtedness to the payee is not, in the absence of an expressed or implied agreement to that effect, a payment or discharge of the debt.' 40 Am.Jur. 763."

Thus, to say the least, it appears that the appellants' contention, above mentioned, as to any such difference between the Hooker case and the Ruppert-Edwards case seems to emanate from confusion of the doctrine or rule which is clearly set forth in 40 Am.Jur. 775, with that in the same volume on page 763. The former of said rules, namely, that on page 775, relates to the payment of checks conditioned to be paid upon presentation and not absolutely, and the latter rule relates to the unconditional and absolute receipt and delivery of checks as constituting payment.

The only distinction we have discerned in such a respect as appellants have stressed is a conception more fanciful than real, namely, that somehow, a check being, as in the instant case, conditional, same is, in legal contemplation, deemed to be payment by the payer, not as of the date when same was delivered to the payee (by what has been called "relation back"), but, instead, that, to become actually effectual, the check would be deemed cleared upon the date of such actual payment and discharge, without regard to such principle of "relation back." So, in their persistency in adhering to such general rule set forth in 40 Am.Jur. 763, appellants, apparently, have completely disregarded the principle or doctrine of "relation back," as set forth in 40 Am.Jur. 775, and, in effect, "hark" back to the general principle or doctrine set forth on page 763, Am.Jur. They have served thus to contend that the authorities contained in notes 19 and 20 cited to said page 775 merely relate to the minority rule; but the fact is that said cases cited in such notes 19 and 20 do truly represent the overwhelming weight of authority when they are coupled with the many other authorities contained in 48 C.J., pages 618–619, cited to the text, and annotated in notes 26 and 27, all of which relate to the principle of "relation back."

It will be clearly apparent that the appellants, by disregarding the proper doctrine, or, at least by their failure to recognize and give regard to same, have indicated support of the contention that, even though the check of $1,600 was cleared upon receiving same back from

the Compton bank on October 27, 1947, the payment of the check did not operate retroactively to the date October 24, 1947, upon which the check was delivered, but only upon the later date upon which same was actually cleared. This is not the law. As a general proposition, the majority view is that, in the event payment is conditional, the discharge is not actually to become effectual *until the check is paid.* It is equally true that upon such condition being fulfilled, by the *check having been paid* upon presentation, such *payment, theretofore conditional, becomes absolute.* In section 86, page 775, 40 Am.Jur., above repeatedly referred to, the language of a very important statement of the text is: "On such *payment* of the check, the debt is deemed to have been discharged *from the time the check was given.*" (Italics ours.) We shall now state and quote said section 86, page 775 (40 Am.Jur.), as follows: "When Payment by Check is Deemed to Have Been Made.—Payment by bill or check becomes absolute payment of the debt when the check is paid on presentation. On such payment of the check, the debt is deemed to have been discharged from the time the check was given. Thus it has been held that a contract which is invalid because made on Sunday is not relieved of its invalidity by reason of the fact that a check given on that day was paid on a secular day. And if under the circumstances of a particular case it is necessary to make a payment at a particular time, as for example to satisfy the part payment provision of the statute of frauds, a check given and received at that time but not cashed until after the specified time, will operate as a payment as of the date when given."

As the first sentence of the said last mentioned paragraph is significant, we feel constrained to repeat it, as follows: *"Payment* by bill or check *becomes absolute payment* of the debt *when the check is paid on presentation."* (Italics ours.) In other words, the proper conception of the meaning of the sentence apparently is: payment, from the instant of completed delivery of the bill or check constitutes *payment,* but according to the

weight of authority, unless some further agreement or act sufficiently proving actual and immediate intent to discharge the debt is shown, such payment, although same is *payment, is conditional merely,* and becomes *complete or absolute payment when the bill or check is presented and paid.*

So, in such a transaction as that involved in the instant case, payment is *payment when completed delivery is had,* and to that extent is evidence of the existing obligation, but it is *conditional merely,* according to the great weight of authority, and continues such until the check is paid on presentation; thereupon, the condition having been satisfied by the check having been paid, the same becomes absolute. The payment conditionally contemplated is not what is construed properly as a condition precedent, but rather a condition subsequent. The condition having been subsequently satisfied by the check having been paid, "the debt is deemed to have been discharged *from the time the check was given.*" (Italics ours.)

The cases to which we have referred, cited in notes 19 and 20 to the said text in 40 Am.Jur., sec. 86, page 775, are: McFadden v. Follrath, 114 Minn. 85, 130 N.W. 542, 37 L.R.A.,N.S., 201; Tonnar v. Wade, 153 Miss. 722, 121 So. 156, citing R.C.L.; Hooker v. Burr, 137 Cal. 663, 70 P. 778, 99 Am.St.Rep. 17, affirmed in 194 U.S. 415, 24 S.Ct. 706, 48 L.Ed. 1046; Franciscan Hotel Co. v. Albuquerque Hotel Co., 37 N.M. 456, 24 P.2d 718, citing R.C.L.; Hunter v. Wetsell, 84 N.Y. 549, 38 Am.Rep. 544; Texas Mut. L. Ins. Ass'n. v. Tolbert, 134 Tex. 419, 136 S.W.2d 584, citing R.C.L.

■ In commercial transactions, particularly, the principle reflects the intention that sound public policy is better served by facilitating, reasonably, and also with practical efficiency and dispatch, the advancement of such transactions, to the end that the public economy and the benefits to flow from advantageous commercial arrangements be encouraged, and such business transactions, generally, enhanced and made more prosperous. So, there

is very good reason why, in many of the decisions or opinions of our courts, it has been found that in the many instances in which checks are forwarded from a person or a banking institution to another person or a bank in order that collection of such check be accomplished, the very generally accepted custom is that in such transactions, as in instances in which bills or checks are employed, the presumption, prima facie, is that the drawer of such bill or check is trustworthy and to be considered honest and reliable, at least until the contrary reasonably appears. Such presumption is, of course, a rebuttable presumption, but, very generally, has the favor of the courts, subject, of course, to certain exceptions, which it is not necessary to mention here. In connection with such a presumption, it seems appropriate to quote the language in the last sentence of section 85, page 774, of 40 Am.Jur., which is the section just preceding section 86, supra, which we have quoted in full and to which we have repeatedly referred and considered. Such last sentence of section 85 is on pages 774 and 775, and is as follows: "The presumption that a check or draft given in payment was intended merely as a conditional payment is not destroyed by crediting it to the debtor's account, or by the act of the bank upon which the check or draft was drawn in charging it to the drawer's account or stamping it as paid, *if it is not in fact paid.*" (Italics ours.)

The above statement of the text of American Jurisprudence illustrates the feasibility of facilitating such transactions. If there should occur a violation or breach of the condition, such payment being intended merely as conditional, such crediting of the account is withdrawn and the stamping as paid is cancelled, leaving the obligation or debt in full force and effect. If, however, the condition has been satisfied by payment, the debt is deemed to have been discharged or extinguished as from the time the check was originally given.

We have no doubt that the appropriate sections and pages above specified, unequivocally and without any

substantial conflict, clearly record the precise question just above stated, and the great weight of authority supporting the text, and the cited cases. Both the appellants and the respondent have, insofar as the authorities and the text disclose, confined themselves to the text and the authorities presented and dealt with in the above-stated sections and pages of 40 American Jurisprudence.

In addition to those, we have considered the text and the cases cited which appear in 48 Corpus Juris. In particular, we shall first deal with the following section:

"[Sec. 50] 3. Checks—a. In General. The delivery to, or acceptance by, the creditor of his debtor's check, although for convenience often treated as the passage of money, is not payment, even though the check is certified before delivery, in the absence of any agreement or consent to receive it as payment, or any laches or want of diligence on the part of the creditor, or the negotiation of the check by him.

"Effect of Payment by Drawee. Where a check delivered to a creditor, although without any agreement or consent on his part to receive it as absolute payment, *is in fact paid in due course, the debt is discharged pro tanto, as of the time at which the check was received;* but a payment other than in due course does not extinguish the debt. A check is accordingly often referred to as *conditional payment,* the condition being its collectability from the bank upon which it is drawn; but it is not such a conditional payment as to release security." (Italics ours.) 48 C.J., pages 617–619, appended to which a great number of cases are cited, and annotated, in the notes 19 to 31, inclusive.

We now refer, particularly, to said notes 26 and 27, on said pages 618 and 619, and in which cases to which reference is made include federal and English cases and those from about twenty states in the United States of America. In the annotation in note 27, on page 619, among many other cases, are: "Eng.—Hadley v. Hadley (1898) 2 Ch. 680; Elwell v. Jackson, Cab. & E. 362; compare Peck v. Parsons-Haddock Co., Ltd. (B.C.) 7

West Wkly. 669 (holding that payment by check dates from the delivery of the check if it is duly honored, but if it is dishonored upon presentment and later paid by the drawee upon a subsequent presentment, the payment does not relate back but takes effect only from the date upon which it is actually made)."

We have considered and read from a considerable number of both those cases cited in 40 American Jurisprudence and in 48 Corpus Juris, above mentioned, and we do not deem it advisable, in view of the unanimity of the authorities as to the precise question involved, to extend this opinion unduly, and will content ourselves with the detailed references to the above-mentioned texts, and to the many decided cases annotated and cited therein.

It appears proper to discuss, further, briefly, a portion of the matters hereinabove quoted from pages 4 and 5, and from page 6, of appellants' opening brief, and which matters are included in assignment of error No. 1, same on said pages 4 and 5 being repeated, in order to direct attention to the following statements of appellants, in their opening brief, viz.:

"Thus it would seem that, before a penalty may be imposed under the provisions of this statute, there are three (3) *conditions precedent;* (Italics ours.)

"1. The payment in satisfaction of the lien, together with costs incurred;

"2. The acknowledgment by the claimant of satisfaction; and

"3. The request of the person interested that the acknowledgment of satisfaction of record be made after payment of the debt." (Pages 4 and 5, above mentioned.)

And on said page 6 is the following:

"Thus it shows conclusively that respondent gave his checks to his attorney on the 23rd day of October, on the 24th they were delivered to attorneys for appellants, and a receipt therefor given, but it does not appear anywhere in the record that any demand was made for the removal of the lien after the 24th of October, at least two (2) days prior to the payment and satisfaction of

the debt. Thus it is seen that two conditions precedent required by Section 3750, N.C.L. are wanting, to wit:

"1. The acknowledgment of satisfaction (the receipt of the 24th of October was a conditional satisfaction and not absolute), and

"2. The demand after payment and satisfaction that the acknowledgment of satisfaction be entered of record."

The above-mentioned two last conditions precedent, so-called (numbered 1 and 2), are intended, particularly as to the "acknowledgment of satisfaction," to bring out, as we conceive it, the contention on the part of appellants that, because the requirements of Section 3750, N.C.L. should be strictly construed, same should be deemed to mean:

2. That the checks, although paid by the Compton bank and forwarded to the Las Vegas bank and there cleared October 27, 1947, and not having been thus cleared until October 27, 1947, and until then being conditional, and not absolute, the promise or agreement contained in the "Receipt" set forth on page 3 of appellants' opening brief, and hereinbefore copied in this opinion, "* * * that *as soon as* * * * *checks and each of them have cleared,* * * *" appellants would execute appropriate release discharging the mechanic's lien heretofore filed by said company against the property of the respondent (italics ours), must be disregarded and rendered abortive and of no effect; that the proper conception is, apparently, that, due to the fact that a penalty is involved in the instant case, it makes no difference that, upon receiving the checks, appellants, by their agents and attorneys, Messrs. Taylor & Gubler, represented or promised that the acknowledgment of satisfaction, impliedly, at least, would be complied with, because the checks had then been paid, but that, on the contrary, it may be deemed that such acknowledgment of satisfaction may be required only *after* actual payment and clearance, by reason of the language of section 3750, to wit, *"on* the payment of the amount thereof, together with the costs incurred and the acknowledgment of satisfaction, shall

* * * " (italics ours), and that same certainly does not mean *before* but only *after* such payment, pursuant to the strict letter of the language of said section 3750. And it is, in effect, contended by appellants that, therefore, the respondent not having personally or by his attorneys *after* such payment ever or at all made such demand for such acknowledgment of satisfaction, no basis justifying appellants' failure to carry out the promise or agreement could properly sustain a cause of action against appellants, nor justify a penalty such as has been imposed by the findings and judgment of the district court. The answer to that contention is twofold:

1.—The terms of the "Receipt" expressly constituted the promise or agreement to the effect that *"as soon as* said checks and each of them have cleared, A. R. Ruppert Plumbing & Heating Company will execute appropriate release discharging mechanic's lien heretofore filed * * *."* (Italics ours.) The provisions of section 3750 would not justify such an ultratechnical construction as to disregard the promise or agreement and to confine it so strictly to the language of section 3750 as to require formally or expressly a request for the acknowledgment of satisfaction, irrespective of the agreement and regardless of the fact that respondent relied upon it. Such a formal renewal of the request for the acknowledgment of satisfaction would have been but an idle ceremony.

2.—The express promise or agreement in the "Receipt" that the A. R. Ruppert Plumbing & Heating Company would "execute appropriate release discharging mechanic's lien * * *" upon the checks having been paid, clearly implied that such appropriate action, including "acknowledgment of satisfaction," preliminary to the execution of such release and discharge, would be had, in accordance with the well settled equitable axiom that "an act shall be deemed done which ought to be done."

3.—Furthermore, appellants themselves have said (on page 6, lines 9 and 10 of their opening brief), "the receipt

of the 24th of October was a conditional satisfaction and not absolute." It follows, therefore, that such acknowledgment of satisfaction, being admitted, but being only conditional and not absolute, no further action on the part of the respondent as to such acknowledgment was required, for the reason that it is clear that by proper analogy and bearing in mind the great weight of authority as to a check tendered conditionally, having thereafter been fully paid and clearance had, and the check of $1,600 paid on October 27, 1947, the implied acknowledgment of satisfaction, theretofore conditional, should have thereupon, simultaneously, been deemed satisfied, and acknowledgment of satisfaction immediately considered to be fully effective, as of the date, October 24, 1947.

The *second* of the propositions with which we are confronted is the contention, above stated, by appellants, and, we think, more accurately phrased and designated by them, is the statement numbered "3," on page 5 of their opening brief, rather than that numbered "2," on page 6 thereof, the former of which is repeated as follows: "3. The request of the person interested that the acknowledgment of satisfaction of record be made after payment of the debt." Why, necessarily, *after* payment? There is nothing which indicates to us that because of the fact that respondent having, on or about October 24, 1947, requested to one Jack Swan, an agent and employee of appellants, that the lien be removed, and to which said agent, Swan, had agreed, and to which, on the 24th day of October, 1947, appellants by their agents and attorneys had agreed, upon condition that the checks be paid, the checks having cleared, particularly the $1,600 check on the 27th day of October, 1947, that such request was ineffectual and should have been disregarded. Bearing in mind fully section 3750, it was, in our opinion, entirely unnecessary and not required that, on the precise day, namely, October 27, 1947, there should have been a renewal, by respondent, of such *request* which had been made on or about said October 24. The matter of such request by respondent should have been by appellants

deemed impliedly conditional, and, in effect, was merely tentative and to be considered held in abeyance until the $1,600 check had been paid. Upon such conditional payment of the check having been satisfied, on October 27, 1947, the *request* made and accepted two or three days before, and which should have been deemed impliedly conditional, as aforesaid, likewise should have been deemed thereby satisfied, simultaneously, and should have been deemed to have become fully effective and absolute, as of the date when the check was presented and paid. The time of such request, on or about October 24, 1947, was doubtless the same day as that of the conditional payment to the bank of the $1,600 check. The check had been delivered by Mr. Edwards to Mr. Franklin, his attorney, on the 23d day of October, 1947, and the request was made by the respondent, Mr. Edwards, to Mr. Swan, agent for the appellants, on or about October 24, 1947, which, as Mr. Edwards stated, was, as he believed from the evidence the next day after October 23, 1947, upon which date the check was delivered by him to Mr. Franklin, and the delivery being the same date, October 24, 1947, upon which the checks were received by Mr. Gubler, of the firm of Taylor & Gubler, and thereupon deposited.

■ By reason of the principles which we have heretofore fully considered and treated in this opinion, and which are to the effect that the conditional payment of a check, forwarded in due course and actually paid, has thereupon become absolute, and that, therefore, such check is, in legal effect, deemed to have been given *as of the date of its delivery,* should be applied equally, it is believed, to such *request* as respondent made in the instant case. This is true not only by reason of the fact that the appellants' agent, Mr. Swan, promised or agreed to same, but also because such a condition, similar to that involved in the dependent principal transaction in the instant case, as to the two checks delivered conditionally but promptly paid and cleared, render it highly advisable,

as we have shown before, that such commercial transactions be diligently facilitated, and that such a request accords to such reasoning. Such diligence, promptness and efficiency should not be retarded, but rather sanctioned and encouraged. Judge Henderson's clear and forthright opinion, above mentioned, was right and commendable.

The principal assignment of error, No. 1, has been fully considered, and we have found same without merit.

The other assignments of error, Nos. 2, 3, 4, 5 and 6, being dependent upon the principles which we have fully treated and determined in discussing assignment of error No. 1, we find, likewise, to be without merit.

██ We have not found it necessary to discuss in detail the question of forfeiture, or the penalty imposed resulting from the appellants' complete failure to release and discharge the mechanic's lien heretofore filed by A. R. Ruppert Plumbing & Heating Company against the property of Edgar Edwards, described as Lots One (1), Two (2), Three (3) and Four (4), Arrowhead Addition to the City of Las Vegas, Clark County, Nevada. Ordinarily, forfeitures and penalties are not favored. Notwithstanding that fact, the law, in section 3750, has made very clear the necessity, which is reasonable and beneficial, that such a lien be released and discharged within the time fixed by the statute. And in the event that, as in the instant case, the appellants, or claimants of such lien, filed as aforesaid, and the facts having been found to exist indicating the lien should be released or discharged, have failed within ten days from such request to enter, or cause to be entered, of record a due acknowledgment of satisfaction of the lien, reasonable penalties are provided by the statute. It is the law, by virtue of the mandatory provisions of the statute, that the prescribed penalty, thus imposed, be upheld.

█ In view of the evidence, the period of ten days, which commenced October 24, 1947, expired November 3, 1947. The penalty, therefore, for such failure, accrued

on said November 3, 1947, and continued, by the limitation of the statute, until January 10, 1948, two months and seven days, or 67 days, at $20 per day, after appellants were requested by the respondent to release said lien, and which, upon clearance of the $1,600 check, on October 27, 1947, and which related back to said October 24, 1947, they failed to do. This was correctly stated by Judge Henderson in his opinion. There became due, therefore, upon the basis of such penalty against appellants and in favor of respondent the sum of $1,340.

In the last paragraph of appellants' reply brief, on page 3 thereof, appellants have asserted "that there is no evidence, first, that the respondent owned the property so described, and secondly, there is no evidence that the lien was filed upon the described property."

Regardless of other evidence, the evidence disclosed by the provisions or terms of the "Receipt," plaintiff's exhibit 7, contained the following:

"It is hereby agreed that as soon as said checks and each of them have cleared, A. R. Ruppert Plumbing & Heating Company will execute appropriate release discharging mechanic's lien heretofore filed by said company against *the property of Mr. Edgar Edwards described as Lots One (1), Two (2), Three (3) and Four (4), Arrowhead Addition to the City of North Las Vegas, Clark County, Nevada.* (Italics ours.)

"Dated this 24th day of October, 1947.

"A. R. Ruppert Plumbing & Heating Company

"By V. Gray Gubler of Taylor & Gubler, Attorneys for said A. R. Ruppert Plumbing and Heating Company."

The question of title was only incidentally, if at all, involved, and the above-recited facts in the second paragraph of the said "Receipt," regardless of the mere denial of the answer, were sufficient evidence to establish the fact of both the lien and the ownership of the property. In view of the evidence, the appellants are clearly estopped to claim otherwise. It would have been

entirely wrong to have sanctioned litigating the property of respondent in order to determine a matter of title, and thereby question whether or not the lien should have been released and discharged under the existing facts and circumstances. The appellants, who received payment as agreed, could not be allowed or permitted still to contend that they were not required to have released and discharged the lien, upon the record, by the proper entry of satisfaction. "One cannot have his cake and eat it too."

It is our belief that we have sufficiently studied and considered each and all of the controversial questions involved. We commend, and in all respects fully approve, the opinion of the Honorable A. S. Henderson, district judge, hereinabove copied verbatim and set forth in the instant case. It is ordered, therefore, that the judgment appealed from and the order denying appellants' motion for a new trial be, and hereby are, affirmed.

BADT and EATHER, JJ., concur.