# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01953-SCT

*FIDDLE, INC.*

*v.*

*STANLEY A. SHANNON, LAUDERDALE COUNTY*
*TAX COLLECTOR, CITY OF MERIDIAN, A*
*MUNICIPAL CORPORATION, AND LAUDERDALE*
*COUNTY BOARD OF SUPERVISORS,*
*LAUDERDALE COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/5/2001 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WALTER T. ROGERS |
| ATTORNEYS FOR APPELLEES: | J. RICHARD BARRY |
| | MICHAEL WAYNE STRAHAN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL AND |
| | CROSS APPEAL - 01/02/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.     Fiddle, Inc. (Fiddle), filed suit in the Circuit Court of Lauderdale County, Mississippi on September 7, 2000, against Stanley Shannon (Shannon) in his official capacity as Lauderdale County Tax Collector. The complaint was later amended to include Lauderdale County, Mississippi (Lauderdale) and the City of Meridian (Meridian), a municipal corporation, as additional defendants. Both the original and the amended complaint were timely answered by the defendants, collectively known as "Tax Collector."

¶2. The Tax Collector filed its motion for summary judgment on the grounds that Fiddle's complaint was not timely filed. Fiddle responded to the motion, and the trial court subsequently entered an order denying summary judgment. The Tax Collector filed a motion to dismiss for want of jurisdiction. The motion was also denied.

¶3. This matter was tried to a jury which returned a verdict in favor of the Tax Collector. Following entry of the judgment based on the verdict, Fiddle filed its motion for a judgment notwithstanding the verdict or, in the alternative, motion for new trial. The Tax Collector filed its motion to assess costs against Fiddle. The trial court denied both motions. Fiddle filed its notice of appeal, and the Tax Collector filed a notice of cross-appeal.

### FACTS

¶4. On August 25, 1997, the Tax Collector conducted a sale of real property for unpaid taxes and assessments on the third floor of the Lauderdale County Courthouse. Anita Jo Ross (Anita) and Bill Ross (Bill), sole shareholders of Fiddle, appeared at the tax sale. Amy Merchant (Merchant) conducted the tax sale in her capacity as deputy tax collector. After the tax sale was concluded, Merchant tallied up the amount each bidder's number had purchased according to the list from the tax sale.

¶5. Fiddle had been engaged in the business of buying real estate at tax sales since 1989. Fiddle operated with respect to tax sales in the following counties: Lauderdale, Noxubee and Kemper. Bill testified that the purpose of the corporation is to buy real estate at tax sales as an investment. Once a delinquent property owner redeems the property within the two years allowed by statute, Fiddle receives its money back with interest. Anita testified that she had attended tax sales since 1990 and was familiar with the procedure.

¶6.     Merchant testified that each bidder was assigned a number. As each parcel's number and a brief description were called out, the bidders would bid on the parcel. A computer printout of what was printed in the newspaper was used to conduct the tax sale. The bidder's names were recorded on the computer printout.

¶7.     Anita testified that she went to the tax collector's office three days after the tax sale and wrote a check for $39,911.31 to cover the parcels Fiddle purchased at the tax sale. Anita was given the opportunity to review the tape of the parcels she bought added to determine the total. In return, the tax collector's office handed Anita 113 tax receipts. Anita testified that the 113 tax receipts contained receipt number 27231 assessed to a Willie Lee Gordon (Gordon), showing $10,245.55 received from Fiddle. Of the total $39,911.31 paid, the $10,245.55 represented the amount paid for the one parcel in question. The record reflects that Anita contended that she first discovered her alleged error in July of 2000. Suit was filed on September 7, 2000. On cross-examination, Anita agreed that had Gordon come forward to pay off the taxes and special assessment plus interest before August 1999, Fiddle would not claim a refund from the Tax Collector.

¶8.     The jury returned its verdict for the Tax Collector, and judgment was entered in accordance with that verdict. The trial court denied Fiddle's motion for judgment notwithstanding the verdict, or in the alternative, motion for a new trial. Fiddle now appeals to this Court raising the following issues:

> **I.      Whether the trial court erred in refusing to grant Fiddle's jury instruction P-1 and P-5 and granting instruction C-7.**
>
> **II.     Whether the trial court erred in denying Fiddle's motion for a judgment notwithstanding the verdict, or, in the alternative, for a new trial.**

The Tax Collector cross-appeals raising the following issues:

**III.** **Whether the trial court erred in denying the tax collector's motion for summary judgment.**

**IV.** **Whether the trial court erred in denying the tax collector's motion to dismiss for want of jurisdiction.**

**V.** **Whether the trial court erred in denying the tax collector's motion to assess costs.**

## DISCUSSION

## I. Jury Instructions

¶9. In *Fred's Stores of Miss., Inc. v. M & H Drugs, Inc.*, 725 So.2d 902, 917 (Miss. 1998), this Court held that:

> This Court has said, "[o]n appeal, we do not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed." *Wallace v. Thornton*, 672 So.2d 724, 729 (Miss. 1996)(citing *Peoples Bank and Trust Co. v. Cermack*, 658 So.2d 1352, 1356 (Miss. 1995)). "Therefore, defects in specific instructions do not require reversal 'where all instructions taken as a whole fairly–although not perfectly–announce the applicable primary rules of law.'" *Wallace*, 672 So.2d at 729 (quoting *Burton v. Barnett*, 615 So.2d 580, 583 (Miss. 1993)).

Where other instructions have both fairly and fully informed the jury, reversal is not warranted on appeal for an error in an instruction. *Coleman v. State*, 804 So.2d 1032, 1038 (Miss. 2002).

¶10. Fiddle argues that the trial court erred by refusing to grant jury instructions P-1 and P-5 and by granting C-7. Those instructions are as follows:

Instruction No. P-1

The Court instructs the Jury that the Plaintiff has paid unto the Defendants, as a result of the 1997 Tax Sale, taxes and special assessments in the sum of $10,245.55 for Parcel No. 076134270700315 which were assessed to Willie Lee Gordon

If you believe, by a preponderance of the evidence, that the Defendant collected or the Plaintiff paid these taxes and special assessments by error or mistake, then your verdict shall be for the Plaintiff.

Instruction P-5

4

The Court instructs the Jury that the Plaintiff has paid as a result of the 1997 Tax Sale, taxes and special assessments in the sum of $10,245.55 for Parcel No. 076134270700315 which were assessed to Willie Lee Gordon.

If you believe, by a preponderance of the evidence, that the Plaintiff, Fiddle, Inc., paid these taxes and special assessments by error or mistake, then your verdict shall be for the Plaintiff.

Instruction No. C-7

The Court instructs the Jury that Fiddle, Inc., a Mississippi for profit corporation, the Plaintiff in this suit, claims that it is entitled to a refund of $10,245.55 for taxes which it claims it mistakenly and erroneously paid. Because Fiddle is the Plaintiff in this suit Fiddle is required to prove to you by a preponderance of the evidence that the Defendants, or one of them, made a mistake and because of this mistake Fiddle mistakenly or erroneously paid for taxes. Preponderance of the evidence means the greater weight of the creditable evidence. You the jury cannot just speculate or assume that the Defendants, or one of them, made a mistake but rather the Plaintiff is required to prove to you the jury, by a preponderance of the evidence, that the Defendants, or one of them, did in fact make a mistake. The Court instructs the jury that the Defendants are not required to prove to you that they did not make a mistake. Unless you find from a preponderance of the evidence that the Defendants, or one of them, in fact made the mistake, you cannot return a verdict for the Plaintiff but rather you must return a verdict in favor of the Defendants.

Fiddle was also granted Instruction No. C-6 which states:

The Court instructs the Jury that the Plaintiff has paid as a results of the 1997 Tax Sale, taxes and assessments in the sum of $10,245.55 for Parcel No. 076134270700315 which were assessed to Willie Lee Gordon.

If you believe, by a preponderance of the evidence, that Stanley A. Shannon, Tax Collector, or his deputy, collected from the Plaintiff these taxes and special assessments by error or mistakes, then your verdict shall be for the Plaintiff.

¶11. Fiddle contends that "the refusal of the trial court" to grant jury instructions P-1 and P-5 "denied Fiddle the opportunity of presenting to the jury for their consideration the issue of whether it was entitled to a refund of erroneously paid...ad valorem taxes." Fiddle further alleges that "there was sufficient facts in the record for the jury to find that Fiddle mistakenly paid the total amount requested by the deputy tax collector of $39,911.13 for 113 parcels of property without reviewing each of the tax receipts presented,

5

and, also, not discovering the inclusion of the parcel in Fiddle's total receipts." Fiddle relies on the following Miss. Code Ann. §§ 21-33-79 & 27-73-7 to support its contention.

¶12. Miss. Code Ann. § 21-33-79 (2001) provides:

The tax collectors of all municipalities are hereby authorized to refund erroneously-paid privilege or ad valorem taxes paid such municipalities. An applicant for such refunds shall submit application to the tax collector of any such municipality, and if such claim be found by the tax collector to be due, and is allowed, then the tax collector of said municipality shall issue a warrant to the claimant and deduct the proper amounts from his next settlement.

¶13. Miss. Code Ann. § 27-73-7 (2000) provides:

The tax collector is authorized and empowered to refund any individual, firm or corporation any ad valorem, privilege or excise tax which has been paid or collected through error or otherwise when such person, individual, firm or corporation has paid any such tax in excess of the sum properly due whether paid under protest or not. Taxes erroneously paid within the meaning of this section shall include, but not be limited to, double payment, or overpayment, or payment on state, United States, vacant and exempt land, and the purchase paid for the redemption of lands erroneously sold for taxes.

All refunds under this provision shall be made out of any monies collected by the tax collector from the same source of revenue, or if such source of revenue no longer exists the refund shall come from the general fund collections. The tax collector shall issue a warrant to the claimant and deduct the proper amounts from his next settlement.

¶14. Fiddle argues that the sole issue for the jury's consideration should have been whether it mistakenly paid the total tax amount on 113 parcels. Fiddle contends that it should not have to prove that the Tax Collector mistakenly or erroneously assessed the amount of the tax owed in order to seek a refund. Fiddle argues that it is not necessary to prove by a preponderance of the evidence that the Tax Collector made a mistake or error in collecting the tax from Fiddle in order for Fiddle to receive a refund. The jury instructions offered by Fiddle and rejected by the trial court seek to collect a refund only upon Fiddle's contention of a unilateral mistake. We find that the jury could not have possibly found that Fiddle was entitled to a refund without determining that the Tax Collector made a mistake or error in collecting the tax.

6

¶15.     The tax and the special assessment was clearly owed and unpaid by Gordon when Fiddle took over the tax on the parcel. In order for Fiddle to prevail, obviously Fiddle is required to establish that the Tax Collector some how mistakenly assigned Fiddle as the purchaser of the subject parcel from the tax sale. The jury determined that the evidence did not support a finding that the Tax Collector owed Fiddle a refund. Fiddle alleges that it never reviewed the stack of tax receipts from the tax sale on August 25, 1997, in order to discover the subject parcel until some one and a half years after the tax sale when no one came forward to redeem the parcel. Fiddle purchased the subject parcel for $10,245.55 and in return the clerk provided Fiddle with a tax receipt for the parcel in question.

¶16.     We find that this assignment of error is without merit.

## II.  Judgment Notwithstanding the Verdict or New Trial

¶17.     Fiddle filed its motion for judgment notwithstanding the verdict (J.N.O.V.) or, in the alternative, for a new trial which was denied by the trial court. On August 25, 1997, the Tax Collector conducted a tax sale for unpaid 1996 ad valorem taxes due the City of Meridian and Lauderdale County, Mississippi. At this sale, approximately 1500 to 1600 parcels were sold. The tax sale began at 8:30 a.m. on August 25, 1997, and lasted until 4:30 p.m. or 5:00 p.m. the same day. Serious bidders were assigned a number and sat in chronological order. The sale was conducted by Merchant in her capacity as deputy clerk. She read each parcel by name, the receipt number, account number, the special assessment, and a brief description. The parcel was offered to the first numbered bidder, and if not purchased, the offer is passed on the second numbered bidder and so on until the parcel is purchased. In the event it was not purchased, it was struck off to the State of Mississippi.

¶18.     Merchant conducted the sale from a computer printout of what was printed in the newspaper advertising the sale of the parcels for unpaid taxes. She recorded the successful bidders' assigned number

7

on the computer printout. At the conclusion of the sale, she determined the successful bidder by comparing the number placed on the computer printout with the assigned number of the bidders. Then she separated each bidder by name, totaled the bidders' purchase, and pulled the receipt on each of the parcels. The successful bidder was then notified and presented the tax receipts for all the parcels purchased and a total amount owed.

¶19. The particular parcel of property involved herein was a parcel assessed to Gordon that had a net ad valorem tax of $30.48, but also carried a special assessment of $9,542.00, together with interest, which arose from the demolition of a structure and the cost assessed to the property. The total amount was $10,245.55. This parcel appeared in Fiddle's total stack of receipts which numbered 113 parcels and paid by Fiddle on August 28, 1997, some three (3) days later.

¶20. Fiddle had a policy of not bidding on sixteenth section property, demolitions or special assessments, because special assessments did not add any value to the property. Anita testified that she did not bid on the subject property and would not bid $10,000 on a parcel whether it had a special assessment or not. She stated that the deputy clerk must have written down Fiddle's name or bidder's number by accident thereby causing the parcel in question to end up in Fiddle's tax receipts.

¶21. Shannon, also, testified that he knew of no one who had previously paid over $10,000 for a parcel of property that had $30.00 worth of taxes on it. Neither Shannon nor Merchant could remember this particular parcel, nor did the Tax Collector have any written records showing what each bidder purchased.

¶22. In *General Tire & Rubber Co. v. Darnell*, 221 So.2d 104, 105 (Miss. 1969), this Court stated that the established rule when the Court considers whether a jury verdict should be disturbed as a matter of law, the Court should consider the evidence in the light most favorable to the non-movant, disregarding any evidence on the part of the movant in conflict with that favorable to the non-movant, and

8

determine if the evidence and reasonable inferences to be drawn therefrom would support a verdict for the movant. *See **Paymaster Oil Mill Co. v. Mitchell***, 319 So.2d 652, 657 (Miss. 1975).

¶23.    This Court in ***City of Jackson v. Locklar***, 431 So.2d 475, 478 (Miss. 1983), stated as follows:

> On a motion for judgment notwithstanding the verdict, the trial court must consider all of the evidence–not just that evidence which supports the non-movant's case–but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable men could not have arrived at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgement might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand.

¶24.    When a trial judge denies a motion for JNOV, this Court examines all of the evidence, not just evidence supporting the non-movant's case in the most favorable light. ***C & C Trucking Co. v. Smith***, 612 So.2d 1092, 1098 (Miss. 1992). In ***C & C Trucking Co.***, this Court stated that:

> It is only when a directed verdict at the close of the plaintiff's case and against at the close of the defendant's case, would have been proper that a judgment notwithstanding the verdict is proper. Such is not the standard where the trial court is required to use its discretion in granting a motion for a new trial. The variance in proof needed to support these motions is easily explained when one recognizes that a JNOV terminates the case, whereas a new trial simply give both parties the opportunity to relitigate the controversy.

*Id*. at 1098-99 (citing ***Stubblefield v. Jesco, Inc.***, 464 So.2d 47, 55 (Miss. 1984)).

¶25.    The motion for a new trial has only been employed in "rare cases when there would be injustice either in allowing the verdict to stand or in granting a j.n.o.v." ***C & C Trucking Co.***, 612 So.2d at 1099. M.R.C.P. 59 authorizes a trial judge to set aside a jury verdict and to grant a new trial as justice requires. A new trial may be granted "when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result from bias, passion, and prejudice." ***Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n***,

560 So.2d 129, 132 (Miss. 1989); *Griffin v. Fletcher*, 362 So.2d 594, 596 (Miss. 1978); *Clayton v. Thompson*, 475 So.2d 439, 443 (Miss. 1985). The trial judge's denial of a request for a new trial will only be reversed by the Court when such denial amounts to an abuse of the trial judge's discretion. *Bobby Kitchens, Inc.*, 560 So.2d at 132; *Maxwell v. Ill. Cent. Gulf R.R.*, 513 So.2d 901, 908 (Miss. 1987). This Court's review of the trial judge's discretion and authority is "limited to an inquiry whether the ruling of the trial judge may be fairly characterized as an abuse of discretion." *Id*. *See Dorris v. Carr*, 330 So.2d 872, 873-74 (Miss. 1976). This Court gives substantial weight, deference, and respect to the decision of the trial judge. *C. & C. Trucking Co.*, 612 So.2d at 1099.

¶26.    We find that the decision of the trial court to deny Fiddle's motion for J.N.O.V. or, in the alternative, a new trial should not be reversed. This assignment of error is without merit.

## CROSS-APPEAL

## III. Statute of Limitations

¶27.    The Tax Collector argues on cross-appeal that the trial court erred in denying its motion for summary judgment alleging that Fiddle's claim was barred by the statute of limitations. The tax sale involving the subject property was held on August 25, 1997. Three days later, on August 28, 1997, Anita paid by check the total amount due for 113 parcels. Fiddle's check was presented to the bank by the Tax Collector for payment, and the check was honored on either September 9 or September 11, 1997. Fiddle requested the Tax Collector provide a refund by letter dated August 17, 2000. Thereafter, Fiddle having received no response filed its action on September 7, 2000. The Tax Collector filed its motion for summary judgment which was subsequently denied by the trial court.

10

¶28.    The Tax Collector contends that payment of the taxes occurred when Fiddle presented its check

for payment on August 28, 1997, and therefore, it was entitled to summary judgment as Fiddle's claim was

time barred when filed on September 7, 2000.  The trial court reasoned in its opinion as follows:

> As stated earlier, the sole question before the [c]ourt is whether the complaint in this cause was filed timely.  The applicable state of limitations, § 15-1-49, MCA 1972, calls for an action for which there is not other applicable limitations period to be commenced within three years after said cause of action has accrued.  Thus, the issue becomes, when did the cause of action for refund of the alleged erroneously paid taxes accrue?
>
> The [d]efendant asserts that the cause of action accrued on the date of the tax sale, which occurred on August 25, 1997.  The [p]lantiff asserts that the cause of action accrued on the date the check was paid by the bank, which occurred on either September 9, 1997 or September 11, 1997.
>
> Shedding light on this issue of "accrual" is an additional statute § 15-1-51, MCA 1972, which provides some guidance of legislative intent.  Section 15-1-51 states in pertinent part:
>
>> The statutes of limitations shall run in favor of the state, the counties, and municipal corporations beginning at the time when the plaintiff first had the right to <u>demand payment</u> of the <u>officer</u> or board <u>authorized</u> to allow or disallow <u>the claim</u> sued upon (emphasis added).
>
> Therefore, the statute of limitations contained in § 15-1-49 began to run when the [p]laintiff first had the right to demand a refund of the alleged erroneously paid taxes.
>
> The right to demand a refund for payment of erroneously paid taxes occurs when the taxes are paid.  Thus, should the [p]laintiff pay with cash, the right to demand a refund would occur on the date of payment.  However, when taxes are paid by check, a further issue aries of when payment actually occurs.  Does is occur when the check is signed, dated, delivered or accepted? Or does it occur upon presentation to the bank for payment and payment by the bank?
>
> In *Tonnar v. Wade*, 153 Miss. 722, 121 So. 156 (1929), the Supreme Court addressed the question of whether a defendant in an election suit was a qualified elector. To be a qualified elector, taxes were required to be paid on or before February 1 of the election year.  The taxes had been paid by check on February 1 and a receipt issued by the tax collector.  The check did not clear the bank on which it was drawn until February 9.  The Court found that, nevertheless, the defendant was a duly qualified elector, saying:
>
>> The general rule is that a check becomes absolute payment of a debt when the check is paid on presentation, and, on such payment, the debt is deemed to have been discharged from the date the check was given....
>> By the giving of the check, the tax obligation and the tax lien are both

11

conditionally discharged, the condition being the payment of the check, and, when the check is paid, a discharge of both the tax obligation and the tax lien relates back to the date of the check. 153 Miss. at 732, 121 So. at 158.

In *Moritz v. Nicholson*, 106 So. 762 (Miss. 1926), the [p]laintiff paid taxes on property to the tax collector by check. However, the tax collector did not present the check for payment to the bank until after the bank failed. *Id*. The Court held that the taxes were not paid by the [p]laintiff by the mere acceptance of the check by the tax collector a payment. *Id*. The Court stated that the acceptance of the check was at most a conditional payment and that payment of taxes does not occur until the check is paid. *Id*., see also *Sunflower Compress v. Clark*, 172 Miss. 256, 153 So. 823 (Miss. 1934).

Therefore, this Court is of the opinion that within the meaning of § 15-1-51, MCA 1972, the taxes were not paid by the [p]laintiff until either September 9, 1997, or September 11, 1997, the date the bank paid the check and debited the [p]laintiff's account. Further, the Court is of the opinion that the [p]laintiff's cause of action did not accrue within the meaning of § 15-1-49, MCA 1972, until September 9, 1997 or September 11, 1997, the date he first had a right to demand a refund. Thus, the filing of the [c]omplaint on September 7, 2000, was timely and the cause of action is not barred by the limitations period found in § 15-1-49, MCA 1972).

¶29. As Fiddle had no right to demand repayment of any monies paid as required by Miss. Code Ann. § 15-1-51 (1995) until either September 9 or September 11, 1997, when the bank paid the check and debited Fiddle's account, we find that Fiddle's action was brought on a timely basis and not barred by the statute of limitations. This issue is without merit.

## IV. Want of Jurisdiction

¶30. The Tax Collector argues on cross-appeal that the trial court erred in denying its motion to dismiss Fiddle's claim for want of jurisdiction. The trial court entered its order denying the motion to dismiss on June 12, 2001. Subsequently, the Tax Collector sought permission from this Court to file an interlocutory appeal and filed a brief in support thereof. This Court denied the Tax Collector's petition for interlocutory appeal on this issue. Trial was held in this matter before the Lauderdale County Circuit Court with the jury returning its verdict in favor of the Tax Collector.

12

¶31. The Tax Collector argues that Fiddle did not follow the proper procedure for bringing its claim before the circuit court. Fiddle wrote Shannon requesting its letter dated August 17, 2000, be treated as an application for a refund of the taxes Fiddle alleged to have erroneously paid. The Tax Collector contends that Fiddle's only avenue to circuit court was to appeal the denial of the request for a refund. Fiddle, however, filed suit in circuit court against Shannon as the Lauderdale County Tax Collector.[1]

¶32. The Tax Collector relies on Miss. Code Ann. § 21-33-83 (2001) and *Smith v. University of Miss.*, 797 So.2d 956 (Miss. 2001). Miss. Code Ann. § 21-33-83 provides:

> Any person, firm, or corporation aggrieved by the action of the governing authorities of any municipality under Sections 21-33-1 through 21-33-85 shall have the right of appeal to the circuit court of the county.

However, the statutory language contained in Miss. Code Ann. § 21-33-79 and 21-33-83 does not exclude a taxpayer's right to file suit. *See Chassaniol v. City of Greenwood*, 166 Miss. 770, 144 So. 548 (1932).

¶33. Furthermore, *Smith*, as relied upon by the Tax Collector in the case sub judice, is not applicable to the facts of this case. *Smith* differs from the facts at hand as it involved a former employee of a state university seeking reinstatement of his position after being terminated for excessive absenteeism and failure to timely perform his assigned tasks. *Smith*, 797 So.2d at 958. Smith appealed his termination decision to the university's Personnel Action Review Board (PARB) for a full administrative hearing. *Id*. PARB is a quasi-judicial administrative panel which has authority to review and overturn employment decisions rendered by the university. *Id*. PARB denied Smith's appeal and affirmed his termination. *Id*. Smith did

---

[1] The complaint was later amended to also include the City of Meridian and Lauderdale County, Mississippi, as defendants.

not appeal the termination decision to the circuit court by writ of certiorari pursuant to Miss. Code Ann. §§ 11-51-93 & -95. *Id*. The university moved to dismiss Smith since he did not appeal. *Id*.

¶34.    Smith then filed a complaint in the Chancery Court of Lafayette County seeking reinstatement to his position, and in the alternative, money. *Id*. at 957. The matter was transferred to the circuit court where the court granted the university's motion to dismiss for lack of jurisdiction or, alternatively, for summary judgment based on res judicata. *Id*. This Court upheld the decision of the circuit court finding that "Smith's exclusive remedy for review of the PARB's decision" was to appeal the decision to the circuit court by writ of certiorari. *Id*. at 965. We find that the Tax Collector's reliance on *Smith* is misplaced.

¶35.    This Court finds that this issue to be without merit.

## V.  Rule 68

¶36.    The Tax Collector filed its motion to assess costs against Fiddle pursuant to M.R.C.P. 68. The trial court denied the motion by its order of November 26, 2001. The Tax Collector argues on cross-appeal that the trial court erred in denying its motion. M.R.C.P. 68 provides:

> At any time more than fifteen days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within ten days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. **If the judgment finally obtained by the offeree is not more favorable than the offer**, the offeree must pay the cost incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict, order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time, not less than ten days, prior to the commencement of hearing to determine the amount or extent of liability.

14

(emphasis added).

¶37.    According to the Tax Collector's motion to assess costs, an offer of judgment dated July 11, 2001, was submitted to Fiddle in the amount of $5,000.00. Fiddle did not accept the offer to settle its claim. The case came to trial, with the jury returning a verdict in favor of the Tax Collector, determining that Fiddle was not entitled to receive a refund.

¶38.    The comments to M.R.C.P. 68 provide that "[r]ule 68 is [designed] to encourage settlements, avoid protracted litigation, and protect the party who is willing to settle from the burden of costs that subsequently come." The trial court did not provide in its order of November 26, 2001, any rationale as to why the motion should be denied. Furthermore, the Tax Collector did not attach a copy of the offer of judgment as an exhibit to its motion, nor was the actual offer of judgment made part of the record on appeal. The record does not reflect that a response was ever filed by Fiddle to the Tax Collector's motion.

¶39.    While looking solely at the motion to assess costs and the language of M.R.C.P. 68, the trial court did not err in denying the motion since there was no judgment obtained by Fiddle to trigger the Rule 68 cost-shifting procedure. *See **Delta Air Lines, Inc. v. August***, 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981) (Fed. R. Civ. P. 68 cannot be used by prevailing defendant-offeror since the plaintiff-offeree did not obtain a judgment). This issue does not raise any reversible error.

<u>**CONCLUSION**</u>

¶40.    For all the foregoing reasons, the judgment of the trial court is affirmed on direct appeal and cross-appeal.

¶41.    **AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL**.

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. COBB, J., CONCURS IN RESULT ONLY.**

15